**John DOE, Plaintiff,**

v.

**John CHAFEE, as Secretary of the Navy, Defendant.**

**No. C–72–282.**

United States District Court, N. D. California.

Feb. 21, 1973.

Armando M. Menocal, III, Michael S. Sorgen, Christopher N. May, Mission Law Office, San Francisco Neighborhood Legal Assistance Foundation, San Francisco, Cal., for plaintiff.

James L. Browning, Jr., U. S. Atty., James A. Bruen, Asst. U. S. Atty., San Francisco, Cal., for defendant.

## MEMORANDUM OPINION AND JUDGMENT

SPENCER WILLIAMS, District Judge.

In his Petition for Writ of Mandamus, petitioner asks the court to adjudge his undesirable discharge from the Navy invalid, order the issuance of an honorable discharge and award him $20,000 in damages.

The matter has been heard and submitted on cross motions for summary judgment. Subsequent to the filing of this action, and to some extent as a result thereof, the Navy has corrected its records to grant petitioner a general discharge, mooting the first point above. The matter of damages has not yet been argued. The sole question before this court is whether an honorable discharge should be ordered. This, in turn rests upon the application of Harmon v. Brucker, 355 U.S. 579, 78 S.Ct. 433, 2 L.Ed.2d 503 (1958); Kennedy v. Secretary of the Navy, 131 U.S.App.D.C. 39, 401 F.2d 990 (1968); Stapp v. Resor, 314 F.Supp. 475 (S.D.N.Y.1970) to the facts of this case.

The facts are as follows:

Petitioner enlisted in the Navy on January 17, 1963 and received an honorable discharge on July 16, 1964. He immediately re-enlisted for a six-year hitch and served until November 7, 1966,[1] the date of his undesirable discharge. The undesirable discharge resulted from petitioner's voluntary disclosure to Naval Authorities of a then existing homosexual relationship—of about two weeks duration—with a shipmate. It was his first and only such experience and no homosexual acts were committed during duty hours or on any Naval ship or station. Up until the reports of this conduct appeared in his military record, it had been exemplary. His first disclosure was to his division officer, and he later gave a sworn statement to a Special Agent of the Office of Naval Intelligence. In his sworn statement he stated he made the voluntary disclosure "because there were too many problems about [my relationship with my shipmate]. We did not want to engage in any acts aboard ship for fear of getting caught. Getting caught in our rack together would have been too much to bear for both of us. But the tension of being together, especially on cruises, and not being able to do what we wanted was causing too much tension and was nerve-racking . . .."

Petitioner was advised that Navy regulations required his separation[2] and was assured that because of his excellent record—and voluntary disclosure—he would receive no less than a general discharge. As a result of this assurance he signed a waiver of counsel[3] and received his commanding Officer's recommendation that a general discharge be granted. Despite the foregoing, the Navy gave him an undesirable discharge.

Upon returning to civilian life petitioner found his efforts to obtain employment in his field (electronics) were unsuccessful due solely to the nature of his

---

1. Total service: 3 years, 9 months and 21 days.

2. 32 C.F.R. 730.12 states in relevant part:
   *Discharge of enlistment personnel by reason of unfitness.*
   (a) Members may be separated by reason of unfitness with an undesirable discharge, or with a more creditable type discharge when it is warranted by the particular circumstances in a given case . . .
   (b) Members whose military records are characterized by one or more of the following may be recommended for discharge by reason of unfitness: . . .

   (5) Homosexual acts.
   The Secretary of the Navy has issued a directive which announces Navy policy regarding homosexuals. It states:
   "Homosexuals and other sexual deviates are military liabilities who cannot be tolerated in a military organization . . . Their prompt separation from the naval service is essential . . ."

3. It is of interest to note that in this waiver he requested both an undesirable discharge (third paragraph) and a general discharge (seventh paragraph).

discharge. He also learned that he was ineligible to receive Veteran's benefits. In June of 1971, he petitioned—through counsel—for "correction . . . of his discharge to either honorable or general discharge . . . "

Frustrated by administrative delays in the processes of the application, he filed his Petition for Writ of Mandamus on February 15, 1972. Following arguments on the aforementioned cross motions the matter was taken under submission, pending outcome of the application to the Board for Correction of Naval Records. On August 7, 1972 the Board for Correction of Naval Records found:

" . . . that petitioner's separation with an undesirable discharge constitutes error and injustice warranting corrective action . . . "

and ordered that the record be corrected to show that on November 7, 1966 he was discharged with a general discharge.

Thereafter, and at further hearings on the matter, petitioner pressed for an honorable discharge, stating that the action of the Board for Correction of Naval Records "although a measurable approach to fairness in the matter herein, does not represent a satisfactory resolution of the controversy . . . ." Respondent contends that the action of the Navy should be sustained.[4]

■ It is not the proper function of this court to substitute its judgment for that of the administrative officer to whom Congress has assigned the functions here under review. 10 U.S.C. §§ 1552, 1553; Sanford v. United States, 399 F.2d 693, 694 (9th Cir. 1968). The power of this court is limited to reviewing the record to insure that pertinent laws and regulations have been followed and to determine whether the action was arbitrary, capricious or unsupported by substantial evidence. And in this case, the sole question is whether there has been a showing in petitioner's military record of a nexus between his homosex-

ual activity and the quality of his military service.

In Harmon v. Brucker, *supra*, the allegedly offensive conduct occurred *prior* to plaintiff's entry into the military service and was nowhere reflected in his military record. "The discharge," the court said, "should accurately reflect the nature of the service rendered." In Kennedy v. Secretary of the Navy, *supra*, the administrative discharge of a naval officer on inactive duty for attendance at Communist Party meetings was also held impermissible since:

"These activities were not reflected in the record of his naval service and there is no finding that they affected the quality of that service . . . "

The court further pointed out that his activities left no discernable impact on the service rendered.

In Stapp v. Resor, *supra*, plaintiff, on active duty with the Army, was given an undesirable discharge twenty (20) days before his enlistment expired. The reason therefor was his off-duty association with a group designated by the Attorney General as a subversive organization. Here again the court pointed out that his record as a soldier was good and stated, "there is not a scintilla of evidence connecting the allegedly guilty association with Private Stapp's performance of his military duties . . . " Finding no basis in fact for its issuance, the court voided the undesirable discharge. "It is impermissible," the court said, "for the military to punish an admittedly competent soldier merely because it disapproves the company he keeps."

■ Dial's contention that the term "military records" in the Department of the Navy's regulations refers only to those records reflecting the quality of military performance rendered by the serviceman is a misinterpretation of the *Harmon, Kennedy,* and *Stapp* decisions. "Military records" refers to a service-

---

4. Petitioner does not contest the authority of the Navy to compel his discharge, only their authority to grant him less than an honorable discharge under the facts herein.

man's official military record in its entirety and is not restricted to his efficiency ratings. The case law indicates quite clearly that "records of military service" and the quality of military service are not synonymous.[5]

Stapp v. Resor is not properly analogous to this case even if the court were to assume, *arguendo*, that "military records" as used in the regulation refers only to the quality of military performance. The missing "scintilla of evidence" that was of primary concern to the *Stapp* court is clearly present here. Petitioner's sworn statement (set out *supra*) revealed that the problems and tensions presented by his homosexual relationship with a shipmate had made and would continue to make the performance of his offficial duties difficult if not impossible.

Finally, petitioner's voluntary participation in a homosexual relationship brought him within the purview of a valid regulation and policy requiring his discharge well in advance of the normal expiration date of his enlistment contract. His off-duty conduct, although not reflected in his service efficiency ratings, certainly affected the length of his military service.

The disclosure of his conduct, although voluntary and commendable, properly became part of his official request for release from the Navy and thus a part of his service record. It can hardly be argued that the regrettable incident which compelled his early release from the service reflected a performance equal that of millions of other persons who fully carry out their enlistment contracts and receive honorable discharges.

The nexus between his conduct, his military record and his performance was therefore established and it cannot be said that the Navy's action was arbitrary, capricious or unsupported by sub-

stantial evidence. The discharge finally granted is under honorable conditions and will not deprive plaintiff of any legal benefits accruing to those with the more creditable Honorable Discharge.

## JUDGMENT

This action came before the court on cross motion for summary judgment.

It is ordered and adjudge that plaintiff take nothing. That the action be dismissed on the merits, and that each party bear its own costs of this action.

---

5. Harmon v. Brucker, *supra*, held the "word 'records' . . . means records of military service." Kennedy v. Secretary of the Navy, *supra*, ruled that the serviceman's membership in the Communist Party was not reflected in the record of his naval service and there was no finding that it affected the quality of that service.