**Antonio A. GILES, Jr., Plaintiff,**

**v.**

**SECRETARY OF the ARMY, Defendant.**

**Civ. A. No. 77–0904.**

United States District Court,
District of Columbia.

Aug. 23, 1979.

Barton F. Stichman, David F. Addlestone, National Veterans Law Center, The American University, Washington, D.C., for plaintiff.

John Oliver Birch, Michael J. Ryan, Asst. U. S. Attys., Washington, D.C., for defendant.

MEMORANDUM OPINION

BARRINGTON D. PARKER, District Judge:

In this proceeding a former United States Army enlistee seeks an interpretation of the scope of a 1974 Court of Military Appeals decision involving orders to compel urinalyses as part of an Army drug rehabilitation program. That decision, *United States v. Ruiz*, 23 U.S.C.M.A. 181, 48 C.M.R. 797 (1974), invalidated an order compelling a urinalysis where the test results, if positive, were intended for use in an administrative

discharge proceeding[1] in which the servicemember could be issued a less than fully honorable discharge. The military court held that the order violated Article 31 of the Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 831, which prohibits compelled self-incrimination.[2]

Plaintiff Antonio A. Giles was charged with drug abuse in an administrative discharge proceeding. His use of drugs was detected by compelled urinalyses ordered and secured by the Army. He was issued a general discharge prior to the ruling in *Ruiz*. Giles now seeks two-fold relief from the Court: first, a declaratory judgment that the use of such evidence in his discharge proceeding violated his Article 31 right against compelled self-incrimination; second, an order requiring that his discharge be recharacterized to honorable. The Army contends that a general discharge was appropriate under the circumstances.

The legal issues to be determined have been presented by the parties in cross motions for summary judgment.[3] For the reasons set forth, the Court concludes that this serviceman's rights have been violated, judgment should be entered in his favor and appropriate relief otherwise granted.[4]

### I.

In 1972, the plaintiff applied for an Army enlistment. His prior drug use was well known and indeed was revealed in two pre-enlistment examinations. In a June, 1972, examination Giles is quoted as saying that "he shot heroin daily for six months . . . [but] hadn't shot since Feb. 1971."[5] The following month he explained to an examining psychiatrist the extent of his prior drug use. The psychiatrist nonetheless found and reported:

> This 23 year old enlistee has used heroin in past but never regularly. He wants to enlist to improve his education and to help support his aging parents. In my judgment, he is not drug addicted nor dependent. . . .[6]

Giles was accepted for a three-year enlistment. His first duty assignment post was in Thailand, a region where addictive drugs were readily available. During late 1973, as part of the Army's drug prevention program, he was compelled to render a urine sample on twenty separate occasions. Ten tests indicated drug usage. On three occasions he refused to obey orders to give samples. At no time was he advised that Article 31 authorized him to refuse giving such samples since the test results could be used to his detriment in support of a general discharge.

In early 1974, Giles was administratively separated from the Army for drug abuse detected by the compelled urine samples. He was issued a general discharge. The then applicable Army regulations recognized a servicemember's Article 31 rights but only to a limited degree. Chapter 13[7] under which plaintiff was separated permit-

---

1. There are three types of administrative discharges—honorable, general (sometimes referred to as under honorable conditions), and undesirable. Administrative discharges are not congressionally authorized but stem from a Department of Defense directive. The only derogatory discharges expressly authorized by Congress are the bad conduct and dishonorable discharges, both imposed solely by sentence of a court-martial. Articles 18, 19, Uniform Code of Military Justice, 10 U.S.C. §§ 818, 819. Courts-martial are criminal proceedings which afford the accused substantially more procedural safeguards than do nonjudicial administrative proceedings.

2. For the text of Article 31, see *infra* page 598.

3. Plaintiff has also moved for class certification, seeking to represent all former Army servicemembers with less than honorable administrative discharges issued in similar administrative proceedings where the Army introduced evidence developed by or as a direct or indirect result of compelled urinalysis testing. The motion is *sub judice*.

4. Giles also contends that he was denied a rehabilitation transfer in violation of Army regulations. In light of the Court's disposition, it is unnecessary to address that issue.

5. Exh. 1 to Complaint.

6. Exh. 2 to Complaint.

7. Army Regulation (AR) 635–200 ¶ 13–5a(3)(b).

ted an administrative discharge for unfitness based solely on drug use "elicited as a result of an individual's volunteering for treatment or being identified by programed biochemical testing," but specified that the individual could not be given less than a general discharge.[8] Servicemembers whose drug use came to the Army's attention in other ways were not so protected and they normally received an undesirable discharge.

Veterans benefits are provided automatically to those with general discharges, while the award of such benefits to those with undesirable discharges is made on a case-by-case basis. It is well recognized, however, that a general discharge carries with it a stigma with many harmful features of an undesirable discharge. Not only is a person's reputation injured and jeopardized, but employment opportunities are restricted, both in the public and private sector. *Bland v. Connally,* 110 U.S.App.D.C. 375, 293 F.2d 852, 858 (D.C.Cir. 1961).

Several months after Giles' discharge, the *Ruiz* court held that an order to provide a urine sample violated the UCMJ's prohibition against self-incrimination where the results were intended for use in administrative discharge proceedings. In January, 1975, the Army modified its regulations to prohibit the issuance of a less than fully honorable discharge to servicemembers separated under circumstances comparable to plaintiff's. The revised Army policy is set out in the plaintiff's pleading:[9]

> Evidence developed by or as a direct or indirect result of a member's having volunteered for treatment, or by or as a direct or indirect result of urinalysis administered for the purpose of identifying drug abusers (either for purposes of entry into a treatment program or to monitor progress during rehabilitation or follow-up), may not be used in any disciplinary action under the Uniform Code of Military Justice or as a basis for characterizing a member's discharge as other than an honorable discharge.

In March, 1975, Giles applied to the Army Discharge Review Board seeking to upgrade his discharge to honorable on grounds similar to those presented here. The application was denied. He then sought and in December, 1976, was denied similar relief from the Army Board for Correction of Military Records. Having exhausted his administrative remedies, the plaintiff timely sought legal redress in this proceeding. He has since amended his complaint to add a class action allegation.

## II.

Article 31 of the UCMJ provides:

(a) No person subject to this chapter may compel any person to incriminate himself or to answer any question the answer to which may tend to incriminate him.

(b) No person subject to this chapter may interrogate, or request any statement from, an accused or a person suspected of an offense without first informing him of the nature of the accusation and advising him that he does not have to make any statement regarding the offense of which he is accused or suspected and that any statement made by him may be used as evidence against him in a trial by court-martial.

(c) No person subject to this chapter may compel any person to make a statement or produce evidence before any military tribunal if the statement or evidence is not material to the issue and may tend to degrade him.

(d) No statement obtained from any person in violation of this article, or through the use of coercion, unlawful influence, or unlawful inducement may be received in evidence against him in a trial by court-martial.

The *Ruiz* conclusion that a urinalysis order violated Article 31, since any positive evidence produced could support a less than fully honorable administrative discharge, was a logical extension of earlier military court decisions. In *United States v. Jordan,*

---

**8.** AR 635–200, ¶¶ 13–5a(3), 13–31a.

**9.** Plaintiff's Motion for Summary Judgment, filed March 8, 1978, Exh. F.

7 U.S.C.M.A. 452, 22 C.M.R. 242 (1957), the court held that an order compelling a urine sample to secure evidence for court-martial proceedings violated Article 31. The accused's court-martial conviction for refusal to obey the illegal order was set aside. The following year, the same court in *United States v. Forslund,* 10 U.S.C.M.A. 8, 27 C.M.R. 82 (1958), took the next logical step and held that evidence procured as a result of such an illegal order was inadmissible in a court-martial proceeding. Forslund's court-martial conviction for wrongful drug use was set aside.

In *Ruiz* as in *Jordan* the accused was convicted for refusal to comply with a urinalysis order. Jordan was also dishonorably discharged as a part of the court-martial sentence. Ruiz on the other hand was not so discharged and his superior officer made it clear that he did not plan to use any drug evidence obtained to support a court-martial but only perhaps an administrative discharge. The court nonetheless found the *Ruiz* order illegal because of the potentially harsh consequences of a general discharge and because it did not believe "Congress intended to permit forced self-incrimination in board proceedings any more than in courts-martial." 23 U.S.C.M.A. at 183, 48 C.M.R. at 799.

### III.

The government counters with an array of arguments as to why the plaintiff's contentions should be rejected:

1) Giles was discharged in February, 1974. Since *Ruiz* was decided later, in July, 1974, that ruling has no bearing on this case and has no retroactive effect.

2) Even if *Ruiz* were applied retroactively, it does not render inadmissible urinalysis evidence produced in administrative discharge proceedings. *Ruiz* did not provide an exclusionary rule but rather served as a prophylactic measure, precluding enforcement of orders to participate in the program.

3) Since the plaintiff never invoked an Article 31 privilege, he cannot now complain that his discharge was based on its denial.

4) Even if *Ruiz* were applied retroactively and encompassed an exclusionary rule, Article 31 only supports such a rule in courts-martial (*i.e.,* criminal proceedings); evidence secured may be used in nonjudicial administrative discharge proceedings.

5) Even if the urinalysis evidence were excluded, other evidence in Giles' separation file justifies his general discharge.

In the remainder of this opinion the Court assesses the government's arguments and explains why they should be rejected.

*Retroactivity*

A substantial body of case law on the retroactivity issue has evolved in both the civil and criminal areas on constitutional and nonconstitutional questions. *See, e. g., Linkletter v. Walker,* 381 U.S. 618, 85 S.Ct. 1731, 14 L.Ed.2d 601 (1965); *Chevron Oil Co. v. Huson,* 404 U.S. 97, 92 S.Ct. 349, 30 L.Ed.2d 296 (1971); *Zweibon v. Mitchell,* 196 U.S.App.D.C. ——, 606 F.2d 1172 (D.C.Cir. 1979). In concluding that *Ruiz* should be given retroactive effect, the Court takes into account various factors which those cases identify for consideration. First, and legally sufficient in and of itself, *Ruiz* did not announce a "new" rule of law that was not foreshadowed by previous judicial decisions. Indeed, some 17 years earlier in *United States v. Jordan, supra,* the court of military appeals had ruled that orders compelling urinalyses to produce evidence for courts-martial were illegal; one year later, the same court held in *United States v. Forslund, supra,* that evidence procured by such orders was inadmissible in those proceedings. The Army was thus on notice that compelled urinalysis evidence was suspect and could not be used to punish the servicemember. Given this history, the defendant could not justifiably rely on its continuing ability to use such evidence in administrative separation proceedings to support a stigmatizing general discharge.

Nor should an order directing that Giles' discharge be recharacterized prove burdensome or unduly tax the administration of

justice. The Army will not be required to conduct a second trial or discharge proceeding. At most, it would appear that an upgraded discharge requires a notification to Giles and a corresponding correction of his various records.[10] Nor does plaintiff's complaint seek damages against the government and thus portend an unanticipated claim against the treasury. As Chief Judge Wright of this Circuit observed in *Zweibon, supra,* the determination is "a pragmatic one that turns on the expected impact of a retroactive overruling on the society and legal system." 196 U.S.App. D.C. at ——, 606 F.2d at 1177. Society will not be harmed by an upgrading of Giles' discharge and Giles will benefit. Under the circumstances society should share plaintiff's interest in having a stigma removed from the record and in having his prospects for the future enhanced.

Finally, both the court of military appeals and the Army itself have applied *Ruiz* retroactively. In *United States v. McFarland,* 23 U.S.C.M.A. 701, 50 C.M.R. 907 (1975), the court expressly applied *Ruiz* to overturn a conviction for disobedience of an order to provide a urine sample where the judgment occurred more than a year before *Ruiz* was decided. Similarly, in *United States v. Lyver,* JAAJ–ED SPCM 1975/3018, the Judge Advocate General dismissed a servicemember's special court-martial conviction for disobedience of a urinalysis order with the comment, "Ruiz must be followed." Prior to *Ruiz,* the Army had denied Lyver's Article 69 appeal, 10 U.S.C. § 869, challenging the legality of the order.[11]

*Admissibility of Compelled Urinalysis Evidence*

■ As it did in *United States v. Forslund, supra,* the Army argues that even if the urinalysis orders are held to violate Article 31, such fact does not render the evidence compelled inadmissible in proceedings to punish the servicemember. It simply makes the orders to Giles "judicially unenforceable;" the proper course for him was disobedience of the orders. Once obeyed, whether because of the compulsion inherent in them and the military framework generally or simply through ignorance of one's rights, the servicemember has no remedy.[12] The *Forslund* court flatly rejected this argument:

> [W]here evidence is secured in violation of . . . Article 31 . . . it is inadmissible. To hold otherwise would effectively deprive Article 31 of its force and make of it a hollow gesture.
>
> Nor can we condone in any manner the use by the military of orders held by this Court to be illegal.

10 U.S.C.M.A. at 9–10, 27 C.M.R. at 83–84. While the illegal urine samples were admitted in that court-martial, *Ruiz* makes clear that Article 31 also applies to administrative proceedings which can stamp a servicemember with a less than honorable discharge. It thus follows that evidence obtained in violation of Article 31 is inad-

---

**10.** It is recognized that additional demands may arise if a class action certification is granted. At this time, however, that issue is not presented for consideration.

**11.** In *Linkletter v. Walker,* 381 U.S. 618, 622, 85 S.Ct. 1731, 1734, 14 L.Ed.2d 601 (1965), the Court defined retroactive application to mean, in the case of criminal convictions, application to convictions "which had become final before rendition of our opinion [announcing a new rule of constitutional law]."

The Court defined "final" as the judgment of conviction rendered, the appeal exhausted, and the time for certiorari having elapsed. McFarland's conviction had not become final in this sense nor has Giles' dishonorable discharge. Since Giles timely sought review in this Court of his derogatory discharge, following exhaus-

tion of his administrative appeals, his discharge is not yet "final." Application of *Ruiz* to his case would not be retroactive as defined by *Linkletter.* Application of *Ruiz* in *Lyver* was truly "retrospective" as used in *Linkletter.* Lyver's Article 69 appeal of his conviction was denied in January, 1973, 18 months before *Ruiz* was decided. The Lyver decision is reproduced as Exh. K to Plaintiff's Motion for Summary Judgment.

**12.** As plaintiff characterizes defendant's argument: "the Army can use the fruits of the illegal orders to mete out the very type of punishment that renders the orders illegal in the first place." Opposition to Defendant's Motion for Summary Judgment, filed June 7, 1978, at 8.

missible in administrative as well as in court-martial proceedings.

### Failure to Assert Article 31 Rights

■ The authority advanced by the Army for its contention that the plaintiff must have asserted Article 31's protection [13] to claim it now is no longer good law. In 1975, the court of military appeals in *McFarland, supra,* overruled the Army Court of Military Review decision relied on by the government here which had sustained McFarland's punishment for disobedience of a urinalysis order because he had not asserted his Article 31 rights. In holding the order illegal, *Ruiz* was cited as the sole basis for reversal. 23 U.S.C.M.A. at 701, 50 C.M.R. at 907. Thus, Giles' failure to invoke Article 31 specifically is foreclosed as a distinguishing factor that places this case outside the ambit of *Ruiz.*

The issue and effect of compliance with a urinalysis order was addressed in *Forslund.* Forslund had been subjected to a blood test and catheterization and denied latrine privileges until he complied with orders to provide a urine sample. The military court, however, found that the compulsion stemmed not from fear of catheterization or possible confinement:

> [T]he illegal order alone provides us with the compulsion, even without the possibility of a fear of catheterization or the confinement present in this case.

10 U.S.C.M.A. at 9, 27 C.M.R. at 83. In *Jordan,* the same court had readily discarded the government's argument that a urinalysis order was merely a "moral sanction to achieve a legitimate end:"

> [T]he force of an order by a superior officer can hardly be equated to a moral sanction. On the contrary, it is a tremendously powerful force in military law. In time of war, a willful refusal to obey is punishable by death. . . . In time of peace, it carries a penalty even greater

than that for desertion with the intent to remain away permanently.

7 U.S.C.M.A. at 454, 22 C.M.R. at 244.

### Article 31's Application to Administrative Proceedings

As previously made clear, *Ruiz* disposes of the argument that Article 31 applies solely to courts-martial by holding the challenged urinalysis orders illegal regardless of the fact that any drug evidence secured was intended for use only in administrative discharge proceedings. While noting that Article 31 specifically refers only to trials by court-martial and not other proceedings, the military court recognized that general discharges also have the effect of punishing the servicemember. The court thus concluded:

> The constitutional prohibition against self-incrimination applies to administrative as well as criminal proceedings. . . . [Citation omitted]. We believe that Article 31(a) has at least equal applicability, for it forbids all persons subject to the Code from compelling another to incriminate himself. None of its terms indicate that Congress intended to permit forced self-incrimination in board proceedings any more than in courts-martial. Hence, in light of Major Davis' conceded desire to utilize the urinalysis against the accused in an administrative discharge proceeding, his order for this reason was also in violation of Article 31 and unlawful.

23 U.S.C.M.A. at 183, 48 C.M.R. at 799.

### Other Evidence Supports Plaintiff's General Discharge

■ Defendant finally argues that even if the urinalysis evidence should not have been considered, other evidence supports a general discharge: namely, Giles' seven day absence without leave and the fact that he was being investigated for writing worthless checks. While disputing that such

---

**13.** Plaintiff was not advised of his statutory right not to incriminate himself by providing the urine samples nor is there any evidence that he was aware of such a right and waived it. *Compare, United States v. Lyver,* JAAJ–ED SPCM 1975/3018, *supra* n. 11, where the service-

member refused to provide a urine sample after being advised by his company commander of his Article 31 rights and given the opportunity to consult counsel who advised him not to provide a sample.

items would justify a general discharge, plaintiff responds that they are nonetheless irrelevant since the admission of the tainted urinalysis evidence requires that he be provided a fully honorable discharge. The Court agrees. The admission of that evidence requires that plaintiff's discharge be upgraded to honorable.

Indeed, in recognition of the constraints of Article 31, *Ruiz* concluded that the Army has two choices as to how it will operate its "generally beneficent" drug rehabilitation program: assure the "voluntary cooperation" of the servicemember or "separat[e] him from the service without penalty." 23 U.S.C.M.A. at 183, 48 C.M.R. at 799. The fact that a general discharge constitutes a penalty cannot be denied. Army regulations have been amended to conform to *Ruiz*, providing honorable discharges for all servicemembers separated for drug abuse detected by compelled urinalysis.

Finally, the Court notes that a 1976 opinion of the Army Judge Advocate General reported in *The Army Lawyer* (Feb. 1977), found that the inclusion of evidence of drug abuse counseling sessions in a discharge file was improper even though the servicemember's discharge was not based on drug abuse and even though the commanding officer had deleted the exempt information from the file prior to its consideration by a board of officers.

In so doing, the Army Judge Advocate General

> noted that the [*Ruiz*] exemption policy requires that an honorable discharge be given to a member processed for elimination on other (non-exempt) grounds where exempt evidence is introduced by the Government into the proceedings . . . or where the decision to initiate discharge action is motivated by the member's exempt drug involvement. . . .

*The Army Lawyer* at 15. If the admission of such evidence requires an honorable discharge even when discharge is contemplated on nondrug related grounds, Giles' argument for an honorable discharge is all the stronger since he was separated for drug abuse based upon evidence obtained in violation of Article 31.

For the foregoing reasons the Court concludes that plaintiff is entitled to summary judgment.