Thomas B. ROELOFS, Appellant,

v.

SECRETARY OF the AIR FORCE.

No. 77–2088.

United States Court of Appeals,
District of Columbia Circuit.

Argued Dec. 12, 1978.

Decided Feb. 6, 1980.

Barton F. Stichman, Washington, D. C.,
with whom David F. Addlestone, Washington, D. C., was on the brief, for appellant.

Kenneth M. Raisler, Asst. U. S. Atty.,
Washington, D. C., with whom Earl J. Silbert *, U. S. Atty., John A. Terry, Peter E.
George and William H. Briggs, Jr., Asst. U.

* United States Attorney at the time the brief was filed.

S. Attys., Washington, D. C., were on the brief, for appellee.

Before BAZELON, Senior Circuit Judge, LEVENTHAL **, and ROBB, Circuit Judges.

Opinion for the Court filed by LEVEN-THAL, Circuit Judge.

Opinion concurring in the result only filed by BAZELON, Senior Circuit Judge.

LEVENTHAL, Circuit Judge:

Appellant challenges the validity of Section C of Air Force Manual (AFM) 39–12, which authorizes the Air Force to separate a servicemember who has been convicted by civilian authorities of certain types of offenses.[1] That regulation prescribes that a servicemember who is discharged on the basis of a civilian court conviction normally should receive a less than Honorable Discharge.[2] In Part I of this opinion, we reject appellant's challenge to the validity of the relevant discharge regulations. For the reasons set forth in Part II, we remand the case in order to permit reconsideration by the appropriate Air Force authority (a) without any presumption of appellant's susceptibility to an Undesirable Discharge and (b) with a requirement that, if an Honorable Discharge is denied, such denial will be accompanied by the statement of reasons mandated by the Administrative Procedure Act, 5 U.S.C. § 555(e).[3]

## BACKGROUND AND DISTRICT COURT RULINGS

In November, 1972, in the United States District Court for the Eastern District of California, Thomas Roelofs entered a plea of guilty to a charge of possessing approximately three grams of heroin with intent to distribute, a violation of 21 U.S.C. § 841(a)(1) (1976). In January, 1973, he was sentenced to 18 months imprisonment, with four months to be spent in a jail-type institution and the execution of the balance of the sentence suspended; he was also placed on probation for three years. So that Roelofs could complete the remaining months of his military service, the trial judge stayed the execution of his sentence "to August 10, 1973 or in the alternative, one week after discharge from the Armed Forces if such discharge should occur before August 3, 1973."[4]

In March 1973, the Air Force initiated a discharge proceeding against Roelofs pursuant to AFM 39–12, § C. Six weeks later, at an administrative hearing before a board of officers, it was determined that, because of his civilian conviction, Roelofs should be

---

** Judge Leventhal authored this opinion but died before it was released.

1. " 2–23 of AFM 39–12, § C, Joint Appendix (JA) 14, states in pertinent part that
   An airman is subject to discharge for misconduct under this section upon conviction by civil authorities (foreign or domestic) or action taken which is tantamount to a finding of guilty of an offense for which the maximum penalty under the UCMJ is death or confinement in excess of one year; or which involved moral turpitude; or where the offender is adjudged a juvenile delinquent, wayward minor or youthful offender or is placed on probation or punished in any way as a result of an offense involving moral turpitude.
   The administrative discharge action initiated against Roelofs was based solely on that part of AFM 39–12, § C which concerns offenses that have a maximum penalty under the Uniform Code of Military Justice in excess of one year. Accordingly, those parts of AFM 39–12,

§ C, which relate to offenses involving moral turpitude are not in issue here.

2. " 2–25 of AFM 39–12, § C, JA 14, states in pertinent part:
   An airman discharged under this section should be furnished an undesirable discharge, unless the particular circumstances in a given case warrant a general or honorable discharge.

3. 5 U.S.C. § (e) provides:
   Prompt notice shall be given of the denial in whole or in part of a written application, petition, or other request of an interested person made in connection with any agency proceedings. Except in affirming a prior denial or when the denial is self-explanatory, the notice shall be accompanied by a brief statement of the grounds for denial.

4. J.A. 23.

issued an Undesirable Discharge.[5] When this recommendation was approved by the commanding officer, appellant was discharged on June 25, 1973.

Roelofs applied to the Air Force Discharge Review Board (DRB) to upgrade his discharge to an Honorable Discharge.[6] After a hearing, the DRB upgraded the discharge to General, but not to Honorable; it prepared no statement of findings and offered no explanation for its decision.[7] Roelofs then applied for an Honorable Discharge to the Air Force Board for Correction of Military Records (BCMR).[8] The BCMR denied his application without a hearing; like the DRB, it did not articulate either its findings or its reasoning.[9]

Having pursued his remedies within the Air Force, Roelofs brought this suit in the United States District Court to compel the Secretary of the Air Force to upgrade his discharge to Honorable. He argued that the Secretary lacked statutory authority to promulgate the regulation relied upon to issue him a less than Honorable Discharge, and that the regulation violated the Due Process Clause of the Fifth Amendment. On cross motions for summary judgment, the district court rejected both claims. This appeal followed.[10]

## I. APPELLANT'S CHALLENGE TO THE VALIDITY OF AFM 39–12, § C

The pertinent regulation, AFM 39–12, § C authorizes the Air Force to separate a servicemember who has been convicted of certain types of offenses by civilian authorities[11] and provides that servicemembers so separated will be issued an undesirable discharge "unless the particular circumstances in a given case warrant a general or honorable discharge."[12] Roelofs challenges only that aspect of the regulation pertaining to the type of discharge certificate issued. He argues that Congress has required that the certificate of discharge must accurately reflect the nature of the military service rendered. He contends that the armed services are prohibited from ordering a less than honorable discharge on the basis of conduct which is not reflected in the record of military service and not found to have adversely affected the quality of that service.

His claim of prohibition on the armed services is based both on the intent of Congress and also, taking into account the stig-

---

**5.** The complete findings and recommendations made by the board were as follows:

That Airman First Class Thomas B. Roelofs is 23 years of age and has 3 years and 9 months of active military service. That on 10 January 1973, Airman First Class Roelofs was convicted of an offense of possession of heroin with intent to distribute a controlled substance, in violation of Title 21, United States Code, Section 841(a)(1), by the Federal District Court for the Eastern District of California, located at Sacramento, California. That Airman First Class Roelofs is therefore considered subject to discharge for misconduct because of civil court disposition under Section C, Air Force Manual 39–12. That Airman First Class Roelofs is not considered a suitable candidate for probation and rehabilitation under Chapter 4, Air Force Manual 39–12.

That Airman First Class Roelofs be discharged from the service for misconduct because of civil court disposition with an undesirable discharge.

J.A. 31.

**6.** J.A. 118. Pursuant to Section 301 of the Servicemen's Readjustment Act of 1944, 58 Stat. 286, codified at 10 U.S.C. § 1553 (1976), each military branch has created a Discharge Review Board (DRB) to review and, where appropriate, to upgrade discharges. Regulations governing the Air Force DRB are found at 32 C.F.R. § 865.100–126 (1978).

**7.** J.A. 121–22.

**8.** J.A. 124. Pursuant to the Legislative Reorganization Act of 1946, ch. 753, § 207, 60 Stat. 812, codified at 10 U.S.C. § 1552 (1976), each military branch created a Board for the Correction of Military Records (BCMR), composed of civilians, to upgrade military records to "remove an injustice." The Regulations governing the Air Force BCMR are found at 32 C.F.R. § 865, 1–18 (1978).

**9.** J.A. 128, 140.

**10.** J.A. 172.

**11.** See note 1, *supra*.

**12.** See note 2, *supra*.

ma and deprivation[13] that attend a less than honorable discharge, on the Due Process Clause of the Fifth Amendment. Appellant contends that, since ¶ 2–25 of AFM 39–12, § C prescribes that a derogatory discharge should normally follow a civilian court conviction, without regard for the impact of the illegal conduct on the quality of military service, the regulation exceeds the Air Force's statutory and constitutional authority.

*Harmon v. Brucker*, 355 U.S. 579, 78 S.Ct. 433, 2 L.Ed.2d 503 (1958), established that a less than honorable discharge may not be based upon activities *prior to* induction into the service. Though *Harmon* was decided on statutory grounds the Court was no doubt concerned lest the Army's action subject the servicemembers involved to *ex post facto* punishment. Other cases circumscribe the military's right to certify a "less than honorable" discharge on the basis of constitutionally protected conduct.[14] In the instant case, appellant is concededly guilty of having committed a violation of the Federal law prohibiting possession of heroin with intent to distribute the drug. This is not a minor matter, nor is it one raising an *ex post facto* concern or touching on appellant's constitutional rights. Neither *Harmon* nor cases involving fundamental liberties control the outcome here.

The challenged regulation in effect provides that if an airman is found guilty of an offense that constitutes a felony under the Code of Military Justice, if triable by court martial, he is subject to discharge for an infraction of military discipline. In this case we consider the regulation only in the aspects involved in appellant's case—the issuance of a general discharge for an act that is a felony under Federal law. We are not concerned with other provisions or applications of the regulation, such as discharge for an offense that involves moral turpitude.

There is no doubt that the Air Force can validly take the position that as a matter of personnel policy it does not want in its service persons who commit a felony while in the armed forces. Appellant does not deny this.

Once the ability of the Air Force to discharge convicted individuals is recognized, there is no irregularity in the presumption that discharge under such circumstances will ordinarily be less than honorable. The general attack upon the regulation must be distinguished from consideration of what is appropriate for a particular case. At this juncture, we do not examine the facts of appellant's particular case. What the regulation establishes, through the technique of presumption is an assignment of a burden. For present purposes it is not necessary to refine the pertinent burden, or to define it as a burden of proof, of persuasion, or of coming forward. The point is that it is consistent with law and lore that an "honorable discharge" should ordinarily connote completion of the term of service in good standing, may ordinarily be withheld from a person who commits, while in the armed forces, an offense that would expose him to a penalty of more than one year's confinement.[15]

Appellant asserts that the military is obligated, by statute and the Constitution, to give an honorable discharge to all persons leaving the service unless they have been guilty of conduct that impairs the quality of their military service.[16] But the military may reasonably and properly look beyond the performance by a particular serviceman of his daily chores, and it may take into

---

13. Appellant alleges that the collateral consequences of a less than honorable discharge, particularly with respect to State veterans' benefits, constitute a deprivation of property.

14. *See e. g., Kennedy v. Sec'y of Navy*, 131 U.S.App.D.C. 39, 401 F.2d 990 (1968).

15. The regulation under consideration is not a conclusive bar to an honorable discharge. We are not called upon to define the kinds of circumstances or considerations that would point toward an honorable discharge.

16. In view of the well-publicized and well-documented drug problem which has faced the military in recent years, the heroin conviction involved here arguably meets even the requirement of "service-relatedness" proposed by appellant.

account the impact of his "outside" actions in diminishing the overall effectiveness of the military. In some instances, the impact may be relatively direct—as when outside crime leads to detention outside military control, or to subjection to control by civil authorities. This is not without pertinence to appellant's situation, and its impact is not gainsaid by the court's decision to permit the Air Force to keep him until the end of his term on August 3, 1973. The court's judgment prevented the military from proposing a renewal of appellant's term, or scheduling duties (including training) in inducement or anticipation of renewal. In many cases there may be a multiplication of such impacts, as in a case like the present one, when the criminal activity of one servicemember is in combination with another, or has the potential to involve still others (if the drugs were sold on the service base), or might use military channels or facilities beyond the ordinary supervision of civilian enforcement authorities. Such matters may be taken into account in the exercise of discretion as to the quality of discharge issued, but they are not conditions of legality for denial of an honorable discharge.

The prime flaw in appellant's approach is the emphasis on the quality of his particular performance of assigned chores and his failure to take into account the impact of his status and actions upon the quality of his military service in a more general aspect. The military has an overall interest, in terms of morale and efficiency, in insisting on a corps of servicemen who abstain from serious criminal activity. In a broad sense, the military does not exceed its province when it in effect instructs its members that their overall obligation as servicemen requires them to abide by the laws of the land.

The regulation provides flexibility to address the needs of particular cases. It sets up a procedure to study the specific facts to see whether the appropriate discharge is honorable, general, or some inferior category. This is no mere formality. Fully one-third of those released from the military because of civilian convictions receive either general or honorable discharges.[17]

This court has no general jurisdiction to sit in review of the particular discharge orders. However, it is appropriate to identify two pertinent considerations. The first is that a "general discharge," the kind given appellant, while not as desirable as an "honorable discharge," is still different in kind from an "undesirable" discharge or "bad conduct" discharge.[18] The second consideration is the fact that a person convicted of a felony is already stigmatized. To the extent that a "general discharge" imparts stigma, the question arises whether it is greater in any significant degree than the stigma already borne by the felon.

■ To the extent that this case involves the issue of Air Force regulations, we reject appellant's contention that an honorable discharge must be provided where there has been a termination because of the commission of a felony unless the government shows that the underlying offense is "service-related" in some direct sense. The case before us involves a general regulation establishing a presumption of an undesirable discharge in the event of such a termination, together with a procedure for a showing that in a particular case the serviceman should be given an honorable or general discharge. We find that regulation reasonable.

We do not have here a case where an *undesirable* discharge was issued based upon conduct which was not "service-related." The incremental stigma that results from an undesirable discharge is of a different order from that present in this case. Regulations indicating that a good record would warrant either an honorable or general discharge [19] create the clear impression

---

17. J.A. 160–65. Though these figures are for the military services as a whole, there is no reason to believe that the statistics for the Air Force would be significantly different.

18. In some respects it may fairly be analogized to a premature discharge denoted "for the convenience of the government." *See* AFM 39–12, § C, ¶¶ 1–24(e)(2) and 1–25.

19. Department of Defense Directive 1332.14.

that an undesirable discharge indicates the *absence* of a good record of performance in the service. This is in adverse finding, over and above the stigma of the felony, because it is equivalent to a finding that the serviceman has performed inadequately on the job. The presumption that an undesirable discharge will result from a civilian conviction is warranted if it results in deficiency in performance of military duties or has a direct impact upon military service. A showing that negatives such a deficiency rebuts the presumption. That is our understanding of the intent of the regulation, and is of course consistent with the upgrading of appellant's discharge from undesirable to general. Appellant's attack on the validity of the regulation is not accepted.

## II. THE REQUIREMENTS OF THE APA

▮ Assuming that appellant is not entitled to a decree declaring the regulation invalid, we respond to his prayer for "such other and additional relief" as may be appropriate [20] by according the lesser relief of a remand to afford the opportunity for a statement of reasons for denying an honorable discharge, a statement required by the Administrative Procedure Act, 5 U.S.C. § 555(e).[21] Though section 551 of the APA specifically excludes from its scope actions of courts martial and military commissions,[22] there is no question that the DRB's and BCMR's involved here are neither courts marital nor military commissions,[23] and the APA's legislative history clearly indicates that it applies to other military functions,[24] including, through the Secretary of the Air Force,[25] the DRBs and BCMRs.

The APA embodies the notion that "Rule of Administrative Law" places emphasis on "a broad-gauged appraisal of the decision-making process, and assurance of its reliability." [26] This entails

the "simple but fundamental" requirement that an agency or official set forth its reasons, a requirement that is essential to "the integrity of the Administrative process," for it tends to require "the agency to focus on the values served by its decision, . . . hence releasing

---

**20.** J.A. 7.

**21.** 5 U.S.C. § 555(e) (1976) provides:
Prompt notice shall be given of the denial in whole or in part of a written application, petition, or other request of an interested person made in connection with any agency proceeding. Except in affirming a prior denial or when the denial is self-explanatory, the notice shall be accompanied by a brief statement of the grounds for denial.

**22.** 5 U.S.C. § 551(1)(F) (1976).

**23.** "[I]n our military law, the distinctive name of *military commission* has been adopted for the exclusionary war-court," which functions for the court-martial proper in time of war. *Madsen v. Kinsella,* 343 U.S. 341, 347 n. 9, 72 S.Ct. 699, 703, 96 L.Ed. 988 (1951) (quoting Winthrop, *Military Law and Precedents* 831 (1920)) (emphasis in original).

**24.** *See e. g.,* S.Rep.No. 752, 79th Cong., 1st Sess. 5 (1945) ("Thus, certain war and defense functions are exempted, but not the War or Navy Departments in the performance of their other functions.").

**25.** With regard to BCMRs, 32 C.F.R. § 865.13 states:

All records of proceedings, except those finalized by the Board under the authority contained in § 865.12(a)(5) or denied by the Board without a hearing, will be forwarded to the Secretary of the Air Force who will direct such action in each case as he determines to be appropriate, which may include the return of the record to the Board for further consideration when deemed necessary. Those cases returned for further consideration will be accompanied by a brief statement setting out the reasons for such action and any specific instructions. If the Secretary's decision is to deny relief, such decision shall be in writing and, unless he expressly adopts in whole or in part the findings, conclusions and recommendations of the Board, he shall include a brief statement of the ground(s) for denial. All Secretarial decisional documents shall be furnished to the applicant and counsel.

§ 865.12(a)(5) does not deal with discharge recharacterization.

**26.** *Childs v. United States Board of Parole,* 167 U.S.App.D.C. 268, 285, 511 F.2d 1270, 1287 (1974) (Leventhal, J. concurring in the result).

the clutch of unconscious preference and irrelevant prejudice."[27]

[4,5] This notion achieves concrete expression in section 6(d) in the APA, now codified at 5 U.S.C. § 555(e) (1976). § 555 is not limited to cases where a specific statutory prescription exists, but applies "according to the provisions thereof."[28] Section 555(e) applies where "a written application, petition, or other request . . . made in connection with any proceedings" is denied. The requirement of "a brief statement of the grounds for denial"[29] obtains even though the request pertains to a matter of discretion or grace, not one of entitlement. Appellant has standing as a person aggrieved by the denial of an honorable discharge in view of the personal and perhaps economic impact. In *King v. United States*, 492 F.2d 1337 (1974), the Seventh Circuit, in an opinion joined by Justice (then Judge) Stevens, held that an application for parole—like the case at hand, a

matter of discretion rather than one of entitlement—was subject to the requirements of § 555(e).[30] The fact that the proceeding for the disposition of appellant's individual application, filed in accordance with pertinent law and regulations, was informal, does not negate the applicability of § 555(e).[31] The *King* doctrine has vitality[32] and fairly governs the instant case.

The legislative history of § 555(e) supports its applicability, and thus with the requirement of a statement of the basis for denying a request, even where there is no formal proceeding or hearing.[33] The requirement of a statement of grounds of denial comports with the purposes of the APA, and abets the understanding and perception, by both the individual affected and the public, that the official or agency has made a considered disposition.

There is an exception to § 555(e) when the denial is "self-explanatory." The Sen-

27. *Id.* (citation omitted).

28. 5 U.S.C. § 555(a) (1976).

29. *See* note 21, *supra*.

30. 492 F.2d 1337 (1974).

31. B. Schwartz, *Administrative Law* 423 (1976). *See also* K. Davis, *Discretionary Justice* 104 (1969).

32. In the parole area, *see Inmates of Nebraska Panel and Correction Complex v. Greenholtz*, 576 F.2d 1274 (8th Cir. 1978); *Childs v. United States Board of Parole*, 167 U.S.App.D.C. 268, 284, 511 F.2d 1270, 1286 (1974) (Leventhal, J., concurring in the result); *Mower v. Britton*, 504 F.2d 396 (10th Cir. 1974).

In other areas, *see Dunlop v. Bachowski*, 421 U.S. 560, 593–94, 95 S.Ct. 1851, 1869–70, 44 L.Ed.2d 377 (1974) (Rehnquist, J., concurring in the result and dissenting in part) (concurring on the grounds that § 555(e) requires the Secretary of Labor to provide a statement of grounds for refusing to institute an action under the Labor-Management Reporting and Disclosure Act of 1959); *Phillips v. Bureau of Prisons*, 192 U.S.App.D.C. 357, 364–65 n. 50, 591 F.2d 966, 973–74 n. 50 (1979) ("It cannot be doubted, then, that [§ 555(e) requires] the Bureau [of Prisons to] supply a statement of reasons when it denies the application of a para-legal who has appropriate sponsorship of a qualified attorney whose right to access is not disputed."); *Gardner v. FCC*, 174 U.S.App.D.C. 234, 237, 530 F.2d 1086, 1089 (1976) (§ 555(e) requires

statement of reasons for petition for reconsideration of FCC decision dealing with the personal attack rule); *Community Service Inc. v. United States*, 418 F.2d 709, 717 (6th Cir. 1969) (§ 555(e) requires statement of reasons for denying petition for review of FCC determination to deny petitioners' requests for waiver of "no-duplication" rule).

33. *See* Senate Committee Report, S.Doc.No. 248, 265–68 (1946):

The section affords the parties in any agency proceeding, whether or not formal or upon hearing, the right to prompt action upon their requests, immediate notice of such action, and a statement of the actual grounds therefor. The latter should in any case be sufficient to apprise the party of the basis of the denial and any other or further administrative remedies or recourse he may have. A statement of the actual grounds need not be made "in affirming a prior denial or where the denial is self-explanatory." However, prior denial would satisfy this requirement only where the grounds previously stated remain the actual grounds and sufficiently notify the party. A self-explanatory denial must meet the same test; that is, the request must be in such form that its mere denial fully informs the party of all he would otherwise be entitled to have stated.

*See also* S.Doc.No. 248, 206 (1946); Attorney General's Manual on the Administrative Procedure Act 69–70 (1947).

ate Committee Report, *supra* note 33, makes it clear that this exception only applies to a situation where the denial, or the continuation of the grounds of a prior denial, "fully informs" the person making the request. Here there was no statement of explanation whatever, either in the denial appealed or previously. It is not enough if Government counsel offer to explain the reasons for the denial; it must be "self-explanatory." Thus, it remains for the appropriate authority to provide the statement of grounds.

The requirement of § 555(e) is modest. Indeed, it probably does not add to, and may even diminish, the burden put on an agency by the APA's provision for judicial review. Any aggrieved person can bring a lawsuit contending that the denial of the requested relief was arbitrary agency action.[34] It would be a rare case indeed in which the plaintiff could not make a plausible enough contention to require the government to state the reasons for its action. When the reasons have not been asserted by the agency at the time the action is taken, there is a prospect of further proceedings to develop those reasons. The burden is lessened if the agency provides at least some statement of reasons at the time it takes its action. In this regard, we note that, in 1976, the government agreed to provide statements of reasons in cases like the appellants arising after January 31, 1977.[35] While the consent judgment by which the government bound itself is not precedent and has not figured in our reasoning, it does suggest that the application of § 555(e) in this context does not impose an intolerable burden.

It cannot be assumed that a remand to provide a statement of grounds would be a futile gesture.[36]

The judgment is in part affirmed, and in part remanded for further proceedings not inconsistent with this opinion.

*So ordered.*

BAZELON, Senior Circuit Judge, concurring in the result only:

I join the court in upholding ¶ 2–25 of AFM 39–12, § C ("¶ 2–25"), and remanding this case to the Air Force for an explanation of appellant's discharge rating. I do so, however, because I find ¶ 2–25 consistent with the Air Force's duty to base the characterization of appellant's discharge solely on the quality of his military service.

In *Harmon v. Brucker*,[1] the Supreme Court observed that the purpose in grading discharges is "to specify the character of service rendered during the period covered by the discharge."[2] Unlike the decision to *discharge* a serviceman, which depends upon the likelihood of his serving effectively if retained, the *characterization* of a discharge depicts the nature of the service he has actually rendered. Thus, although a wide range of behavior (including pre-service and off-duty behavior) may be pertinent to a discharge decision, only those activities that have in fact affected the performance of a serviceman's military

---

**34.** *See* 5 U.S.C. § 706 (1976) and 5 U.S.C. § 551(13) (1976).

**35.** *Urban Law Institute of Antioch College, Inc. v. Secretary of Defense*, No. 76–0530 (D.D.C., filed March 31, 1976), culminated in settlement providing that, beginning January 31, 1977, DRBs and BSMRs would make statements of findings and reasons for their decisions. ¶¶ 5A(1)(a), (c), (d) and 5B(1)(a) of the Stipulation for Dismissal, 4 MLR 6012–14 (May-June 1976). In relevant part, the settlement is now embodied in 32 C.F.R. § 865.114 (1978) (AFDRBs) and 32 C.F.R. §§ 865.7, .12 and .13 (1978) (AFBCMRs).

**36.** It may be that the BCMR assumed that it had the authority to retain an undesirable discharge, and continue the "presumption" of the regulation, even though the offense had no connection with performance in the service and had no direct impact on the service. On such an assumption the ruling of a general discharge represented an upward adjustment. With the removal of that assumption, the BCMR might still decide to exercise its authority to grant an upward adjustment, but an upward adjustment from a general discharge base would yield an honorable discharge.

**1.** 355 U.S. 579, 78 S.Ct. 433, 2 L.Ed.2d 503 (1958).

**2.** *Id.* at 583, 78 S.Ct. at 436 (citing Army regulations).

duties are relevant in describing the quality of his past service.[3]

Paragraph 2–25 does not, in my view depart from these requirements. By creating a presumption that certain civilian convictions will ordinarily warrant an Undesirable discharge,[4] ¶ 2–25 simply reflects the Secretary's judgment that such a conviction (and the conduct underlying the offense) is likely to have adversely affected the quality of an airman's military service.[5] As Department of Defense statistics reveal, those responsible for grading discharges have not blindly followed this presumption.[6] And both Department of Defense and Air Force regulations expressly require the final characterization of an airman's discharge to depend solely on his record of military service.[7] Paragraph 2–25 thus does not re-

3. Significantly, the Supreme Court reversed this court's decision in *Harmon* precisely for our failure to recognize this limitation. The majority opinion of this court had stated:

> [I]f he can be discharged as a security risk, the Army can determine whether he is or is not a security risk. And in that determination surely no data is more relevant and material than are his past habits, activities and associations. . . . If it could make that determination, as admittedly it could, and upon that basis could determine whether a man was suitable for any service whatsoever, it could include that consideration among the factors to be considered in determining the value of his service and, consequently, in selecting the type of discharge to be given him.

> *Harmon v. Brucker*, 100 U.S.App.D.C. 190, 197, 243 F.2d 613, 620 (D.C. Cir. 1957). The Supreme Court accepted this court's conclusion that preinduction activities were relevant in deciding *whether* to discharge a soldier, but the Court rejected the proposition that those same activities could be considered in selecting the type of discharge he is given.

> The majority cannot successfully distinguish *Harmon* and succeeding cases from this appeal. *See* Maj. Op. at —— of 202 U.S.App.D.C., at 597 of 628 F.2d. In *Harmon*, the Supreme Court reached its conclusion that discharge ratings must be based solely on a serviceman's "records of military service" on statutory grounds, 355 U.S. at 583, 78 S.Ct. at 435, and the relevant statutes remain in force without substantive change. *Compare* 10 U.S.C. § 652 (1946) *with* 10 U.S.C. § 1168 (1976); *compare* 38 U.S.C. § 693h (1946) *with* 10 U.S.C. § 1553 (1976). *See Stapp v. Resor*, 314 F.Supp. 475, 478 (S.D.N.Y.1970); 1962 U.S.Code Cong. & Admin.News, pp. 2456, 2459. Subsequent cases thus uniformly recognize that the military's statutory authority to issue derogatory discharges presumes those discharges will be based solely upon activities reflected in the serviceman's military record. *See, e. g., Kennedy v. Secretary of the Navy*, 131 U.S.App. D.C. 39, 401 F.2d 990 (D.C. Cir. 1968); *Bland v. Connally*, 110 U.S.App.D.C. 375, 293 F.2d 852 (D.C. Cir. 1961); *Doe v. Chafee*, 355 F.Supp. 112 (N.D.Cal.1973); *Stapp v. Resor, supra*.

4. "An airman discharged under this section should be furnished an undesirable discharge, unless the particular circumstances in a given case warrant a general or honorable discharge." AFM 39–12, § C, ¶ 2–25.

5. Often, for example, the convicted servicemember will be forced to shorten or interrupt his tour of duty to serve prison time for his civilian offense. Even where the airman's misconduct does not directly prevent him from continuing to perform his military duties, the nature of his criminal actions may often bear upon the character of his military service. Crimes committed while the servicemember is on duty or which involve the use of military facilities or supplies, for example, necessarily reflect adversely on his military record. In the present case, however, the Air Force has not in this record adduced any evidence that appellant's conviction hampered his ability to serve effectively or interfered more generally with military affairs. *See* note 18 *infra*.

6. *See* Maj. Op. page —— of 202 U.S.App.D.C., page 598 of 628 F.2d.

7. In 32 C.F.R. Part 41 (1978) the Department of Defense has provided "policies, standards, and procedures [to] govern the administrative separation of enlisted persons of the Armed Forces." 32 C.F.R. § 41.1 (1978). Section 41.3 of these standards defines an administrative discharge characterization as "a determination reflecting a member's *military behavior and performance of duty* during a specific period of service." 32 C.F.R. § 41.3(1) (emphasis added). A later provision requires "the characterization of service [in an administrative discharge to be] determined *solely by the member's military record* during that enlistment or period of service." 32 C.F.R. § 41.9(b)(2) (1978) (emphasis added).

The Air Force's own regulations contain parallel provisions. Paragraph 1–24 of AFM 39–12, § C, which serves as a guide for the application of ¶ 2–25, requires the type of certificate issued upon administrative separation from the Air Force to be "determined solely by the member's military record during [the current] enlistment or period of service." And ¶ 1–22, entitled "Factors Governing Issuance of Honorable, General or Undesirable Discharge," instructs

quire, nor should it be interpreted to permit, a less-than-Honorable discharge to rest upon conduct that has not affected the quality of an airman's military service.[8]

My disagreement with the majority lies in their refusal to apply this fundamental principle here, where Airman Roelofs received a General rating. The majority apparently concludes that an Undesirable rating requires a reason related to service performance; a General rating does not. I believe that neither of the majority's premises for this conclusion is supported by the record or by precedent. First, the majority assumes that ¶ 2–25 draws a distinction between Honorable and less-than-Honorable discharge ratings, creating a presumption in favor of the latter upon evidence of a civil-ian conviction.[9] The fallacy of this assumption is made apparent by the very terms of ¶ 2–25, for the regulation creates only a presumption in favor of *Undesirable* discharge ratings.[10] Secondly, the majority speculates that the stigma borne by a felon who receives a General rather than an Undesirable rating is not substantial enough to warrant judicial concern.[11] I can simply find no support for this proposition. Our cases have uniformly recognized that because 90% of all discharges are graded Honorable, anything less than an Honorable discharge is considered derogatory and can inflict both social and economic injury upon its recipient.[12] Further, the injury from a less-than-Honorable discharge is often entirely independent of the underlying reason for the derogatory characterization.[13]

---

commanders to "consider all pertinent factors in each case to *insure that the discharge accurately reflects the military record of the individual* while a member of the Air Force." AFM 39–12, § C, ¶ 1–22 (emphasis added).

**8.** Because ¶ 2–25 does not mandate an Undesirable rating in every case, it differs from military regulations that have been declared unconstitutional for failing to permit individualized determinations. *See Crawford v. Cushman,* 531 F.2d 1114 (2d Cir. 1976) (Marine regulation mandating discharge for pregnancy); *Martinez v. Brown,* 449 F.Supp. 207 (N.D.Cal.1978) (Navy regulation mandating discharge upon finding of homosexual conduct). *Cf. International Harvester Company v. Ruckelshaus,* 155 U.S.App.D.C. 411, 437, 478 F.2d 615, 641 (D.C. Cir. 1973):

> Considerations of fairness will support comprehensive and firm, even drastic, regulations, provided a "safety valve" is also provided—ordinarily a provision for waiver, exception or adjustment, in this case a provision for suspension.

**9.** Maj. Op. at —— of 202 U.S.App.D.C., at 597 of 628 F.2d. The majority is not entirely consistent on this point, however. *Compare id.* ("[¶ 2–25 creates] presumption that discharge . . . will ordinarily be less than honorable.") *with* Maj. Op. at —— of 202 U.S.App. D.C. at 598 of 628 F.2d ("The case before us involves a general regulation establishing a presumption of an undesirable discharge . . .").

**10.** *See* note 4 *supra.*

**11.** Maj. Op. at —— –—— of 202 U.S.App.D.C., at 598–599 of 628 F.2d.

**12.** *See Kauffman v. Secretary of the Air Force,* 135 U.S.App.D.C. 1, 5, 415 F.2d 991, 995 (D.C. Cir. 1969); *Van Bourg v. Nitze,* 128 U.S.App. D.C. 301, 302, 388 F.2d 557, 559 n. 1 (D.C. Cir. 1967); *Bland v. Connally,* 110 U.S.App.D.C. 375, 293 F.2d 852, 858 (D.C. Cir. 1961). *See also Giles v. Secretary of the Army,* 475 F.Supp. 595, 602 (D.D.C.1979); *Stapp v. Resor, supra,* 314 F.Supp. at 478; AFM 39–12, § C, ¶ 1–22; Comment, *Punishment of Enlisted Personnel Outside the UCMJ: A Statutory and Equal Protection Analysis of Military Discharge Certificates,* 9 Harv.Civ.Rights-Civ.Lib. Rev. 227, 228–333 (1974); Lunding, *Judicial Review of Military Administrative Discharges,* 83 Yale L.J. 33, 34–35, 43 (1974). As the court stated recently in *Giles, supra* :

> It is well-recognized . . . that a general discharge carries with it a stigma with many harmful features of an undesirable discharge. Not only is a person's reputation injured and jeopardized, but employment opportunities are restricted, both in the public and private sector.

475 F.Supp. at 598. Further, many states, including appellant's home state of Texas, distinguish between Honorable and General discharge ratings in providing veterans' benefits. *See, e. g.,* Tex.Educ.Code Ann. § 54.203(a) (Vernon 1972 & Supp.1977) (exempting only honorably discharged veterans from tuition and fees at state institutions of higher education); Tex. Rev.Civ.Stat. art. 4413(31) (Vernon 1976) (providing employment preferences only to honorably discharged veterans).

**13.** *See, e. g.,* Tex.Rev.Civ.Stat. art. 4413(31) (Vernon 1976) (veterans benefits denied regardless of reason for less-than-Honorable discharge); Jones, *The Gravity of Administrative Discharges: A Legal and Empirical Evaluation,*

The appropriate course, in my judgment, is therefore to remand this case to the Air Force to ensure that appellant's discharge rating was based solely upon proper considerations. At his hearing before the Discharge Board of Officers, appellant presented evidence that his civil conviction—which stemmed from an arrest while he was off base, off duty, and out of uniform—did not adversely affect the quality of his military service.[14] In these circumstances, it is incumbent upon the Air Force to provide some justification for the characterization of his discharge as less-than-Honorable.

The Air Force nevertheless argues, and the majority suggests,[15] that in view of the much-publicized drug problem in the military, "it is inconceivable that [the Discharge Board] could not have found that appellant's conviction and the circumstances surrounding the offense adversely affected the quality of his military service."[16] It may be that appellant's less-than-Honorable rating could be lawfully justified on this or some other basis.[17] But the Air Force has thus far failed to provide a reason for the characterization.[18] It is well-settled that a court must judge challenged agency action solely on the grounds invoked by the agency,[19] and neither counsel's nor the court's *post hoc* rationalizations can substitute for the agency's reasons.[20] To enable meaning-

ful review of the Air Force's discharge decision[21] and to fulfill the requirements of 5 U.S.C. § 555(e),[22] I therefore join the court in remanding this case to the Air Force.

59 Mil.L.Rev. 1, 25 (1973) (significant proportion of employers in nationwide survey reported they automatically reject applicants with a General discharge).

14. J.A. 24–26.

15. *See* Maj. Op. at —— n. 16 of 202 U.S.App. D.C., at 597 n. 16 of 628 F.2d.

16. Brief for Appellee at 11–12.

17. Appellee notes, for instance, that in addition to a civil court conviction, Roelofs had also been absent without leave for twenty days during his period of service. Brief for Appellee at 11 n. 11.

18. As described by the majority, neither the Discharge Board of Officers nor the administrative review board offered any explanation for its actions.

19. *See, e. g., Burlington Truck Lines v. United States*, 371 U.S. 156, 168–69, 83 S.Ct. 239, 245–46, 9 L.Ed.2d 207 (1969); *SEC v. Chenery*

*Corp.*, 332 U.S. 194, 196, 67 S.Ct. 1575, 1577, 91 L.Ed. 1995 (1947).

20. *E. g., Matlovich v. Secretary of the Air Force*, 192 U.S.App.D.C. 243, 251–52, 591 F.2d 852, 860–61 n. 20 (D.C. Cir. 1978); *Van Bourg v. Nitze, supra*, 128 U.S.App.D.C. at 309, 388 F.2d at 565.

21. We have previously emphasized the need for administrative findings to permit meaningful review of military discharges. *See, e. g., Matlovich v. Secretary of the Air Force, supra*, 192 U.S.App.D.C. at 248–49, 591 F.2d at 857–58; *Van Bourg v. Nitze, supra*, 128 U.S.App.D.C. at 307–09, 388 F.2d at 563–65; *Davis v. Brucker*, 107 U.S.App.D.C. 152, 275 F.2d 181 (D.C. Cir. 1960); *Olenick v. Brucker*, 107 U.S.App.D.C. 5, 273 F.2d 819 (D.C. Cir. 1959).

22. *See* Maj. Op. at —— — —— of 202 U.S.App. D.C., at 599–600 of 628 F.2d.