157 T.C. No. 3

UNITED STATES TAX COURT

BOBBY LEE ROGERS, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 17985-19W.                    Filed August 2, 2021.

P submitted nine claims (collectively, the claim) for a
whistleblower award under I.R.C. sec. 7623 to the IRS Whistleblower
Office (WBO).  The claim asserted that certain individuals had
conspired to commit "grand theft through conversion" of the assets of
P's mother.  After reviewing P's claim, a classifier from an IRS
operating division recommended that the claim be rejected because it
failed to meet threshold criteria set out in the regulations under I.R.C.
sec. 7623.  The WBO then issued P a letter purporting to reject the
claim on an alternative ground, stating:  "The claim has been rejected
because the IRS decided not to pursue the information you provided."

P timely appealed to our Court under I.R.C. sec. 7623(b)(4).
I.R.C. sec. 7623(b) provides that we may review whistleblower award
determinations when certain monetary thresholds established in I.R.C.
sec. 7623(b)(5)(A) (relating to claims against individuals) and (B)
(relating to all claims) are satisfied.  The record in this case does not
establish whether the action here satisfies these thresholds.

**Served 08/02/21**

After P's petition for review, R filed an answer that did not address the monetary thresholds under I.R.C. sec. 7623(b)(5). R subsequently filed a motion for summary judgment, arguing that the WBO's determination should be classified as a rejection and did not represent an abuse of discretion.

Held: Consistent with our holding in <u>Lippolis v. Commissioner</u>, 143 T.C. 393 (2014), which considered I.R.C. sec. 7623(b)(5)(B), the monetary threshold set out in I.R.C. sec. 7623(b)(5)(A) is not a jurisdictional requirement, but rather creates an affirmative defense that must be pleaded in the answer and proved by R.

Held, <u>further</u>, because R did not plead in his answer that the action here fails to satisfy the monetary thresholds under I.R.C. sec. 7623(b)(5), that section does not preclude us from considering the case on the merits.

Held, <u>further</u>, when the WBO determines that a whistleblower is not entitled to an award, the regulations provide for two potential courses of action: The WBO may reject the whistleblower's claim or it may deny the claim; failure to follow one of the paths set out in the regulations is an abuse of discretion.

Held, <u>further</u>, although the WBO's letter purported to reject P's claim, the rationale included in the letter is associated with a denial (rather than a rejection) under the regulations.

Held, <u>further</u>, given the rationale included in the WBO's letter, neither the letter alone nor the letter coupled with the administrative record provides a coherent account of the WBO's determination that is consistent with the regulations; therefore, the WBO's determination constitutes an abuse of discretion and cannot be upheld on review.

Held, <u>further</u>, the mere involvement of a classifier from an IRS operating division in the WBO's determination does not preclude this Court's review of the determination.

Bobby Lee Rogers, pro se.

Robert J. Braxton, Timothy B. Heavner, and Bartholomew Cirenza, for respondent.


OPINION


TORO, Judge: Section 7623[1] provides for awards to individuals (commonly referred to as whistleblowers) who submit information to the Government about third parties who have underpaid their taxes or otherwise violated the internal revenue laws. The Whistleblower Office ("WBO") of the Internal Revenue Service ("IRS") has been entrusted with the responsibility of reviewing claims under section 7623 to determine whether a whistleblower is entitled to an award. The Department of the Treasury and the IRS have adopted regulations under section 7623 that describe, among other things, actions that the WBO is empowered to take when making award determinations, including rejections and denials of whistleblower claims.

In this case, we consider the extent to which the WBO is constrained by the regulations when it communicates adverse decisions to whistleblowers.

---

[1]Unless otherwise noted, all section references are to the Internal Revenue Code of 1986 in effect at all relevant times, and all Rule references are to the Tax Court Rules of Practice and Procedure.

Specifically, petitioner, Bobby Lee Rogers, has appealed, pursuant to section 7623(b)(4), a determination of the WBO that declines to grant him an award. Respondent, the Commissioner of Internal Revenue (the "Commissioner"), has filed a motion for summary judgment under Rule 121, arguing that the WBO "rejected" Mr. Rogers' claim and that this determination was consistent with the regulatory scheme and supported by the administrative record. But the letter that the WBO sent to Mr. Rogers purported to reject his claim based on a rationale that the regulations specifically associate with an alternative adverse determination, a denial.

Under long-established administrative law, we can uphold the WBO's determination only on the grounds it actually relied on when making its determination. See Kasper v. Commissioner, 150 T.C. 8, 23-24 (2018) (citing SEC v. Chenery Corp. (Chenery I), 318 U.S. 80, 93-95 (1943), and SEC v. Chenery Corp. (Chenery II), 332 U.S. 194, 196 (1947)). A review of the record here leaves us unable to conclude that the determination reflected in the WBO's letter was consistent with the regulations. Accordingly, the WBO's determination was an abuse of its discretion, and we therefore must deny the Commissioner's motion.

## Background

The facts described below are drawn from the parties' pleadings and motion papers, including the exhibits attached thereto and the administrative record as certified by the Commissioner.

### A.     Mr. Rogers' Award Applications

In 2019, Mr. Rogers submitted nine Forms 211, Application for Award for Original Information, to the WBO, along with certain attachments. Mr. Rogers' Forms 211 identified nine target taxpayers--all individuals and extended family members or personal acquaintances of Mr. Rogers--and alleged that they had conspired to commit "grand theft through conversion" of the assets of Mr. Rogers' mother. The forms further alleged that the target taxpayers knowingly engaged in a "planned offense," through which property owned in part by Mr. Rogers' mother was fraudulently shifted through a variety of business entities, with the result that she was "[divested] of her financial assets and property without her direct knowledge or control."

Mr. Rogers attached a number of supporting documents to his Forms 211, including various trust instruments, affidavits, corporate filings, and news articles. The documents were part of an "investigation report" that Mr. Rogers had prepared

and submitted to law enforcement agencies at the Federal, State, and local levels in an attempt to regain ownership of his mother's assets.[2]

B.    WBO Review

Mr. Rogers' Forms 211 and attachments (collectively, his claim) were received and date-stamped by the WBO Initial Claims Evaluation ("ICE") Team in August 2019.  The ICE Team assigned nine separate claim numbers--including one master claim number--to Mr. Rogers' claim and mailed him a letter acknowledging that the WBO had received the materials.  The ICE Team then routed Mr. Rogers' claim to a classifier in the IRS Small Business Self-Employed ("SBSE") operating division.[3]  The SBSE classifier reviewed the claim and completed a classification sheet for each of the nine separate claim numbers.  The classifier made the same recommendation on each sheet:  "Reject the Claim:  Allegations are not specific, credible, or are speculative--Allegations are not credible."  On the classification

_____

[2]The package that Mr. Rogers sent to the WBO included a power of attorney authorizing Mr. Rogers to act on his mother's behalf.  Mr. Rogers' mother died on July 10, 2020, and he is now the executor of her estate.

[3]As the Court observed in Cline v. Commissioner, T.C. Memo. 2020-35, at *5 n.3, the operation of the claim evaluation function of the WBO--which includes claim intake, monitoring, and awards processing--is now shared by the SBSE operating division.  See Internal Revenue Manual ("IRM") pt. 1.1.26.1.3.5 (Jan. 11, 2018).

sheet for the master claim number, the SBSE classifier listed the following as bases for his recommendation:[4]

- TP has filed [F]orm 1040 through 2017, missing 2018.

- There are no balances due.[5]

- WB did not provide a breakdown of the years and how much money was benefitted to TP per year.

- The * * * [whistleblower's information] states that TP and associates embezzled a total of $8M since 1992.

- WB does not provide documentation to show how much money was embezzled and when money was embezzled.

- Failure to provide substantive information, if available, to support the allegation. Rejecting claim per Treas. Reg. 301[.]7623-1(c)(1) for failing to include specific and credible information to support a potential tax violation/allegation, as well as documentation to support the claim.

The WBO E-Trak report for each claim number associated with Mr. Rogers' claim indicates that the SBSE classifier further recommended: "Treat as a 7623(a) claim for purposes of the rejection[.] The allegations may describe an amount greater

---

[4]The classification sheets for the remaining claim numbers were identical in all material respects to the sheet for the master claim number, apart from minor variations in the tax histories of the target taxpayers.

[5]These first two entries demonstrate that the SBSE classifier performed at least a cursory review of each target taxpayer's tax filings.

than $2 million, but the claim lacks specific/credible information, is purely speculative in nature, or does not allege a tax issue."

A few days after the SBSE classifier completed his review, a Tax Examining Technician for the WBO drafted an Award Recommendation Memorandum (the "ARM"). The ARM was addressed to Keith Dehart, a supervisory Tax Examining Technician overseeing the WBO's ICE team. The ARM included a notation recommending that the WBO "reject" Mr. Rogers' claim. The ARM further explained that the claim had been "[r]ecommended for rejection by classification." In addition to this "Summary Recommendation," the ARM recited the same bases for the recommendation that appeared in each of the SBSE classifier's classification sheets.

After the ARM's preparation, the WBO did not forward Mr. Rogers' claim to an IRS examiner for possible action with respect to the target taxpayers. Instead, the ICE Team immediately issued Mr. Rogers a letter (the "WBO Letter" or "Letter"), dated September 10, 2019, declining to grant him an award. The Letter, which was styled "Final Decision Under Section 7623(a)," was signed by "Layne Carver for Joseph Hebb, Program Manager Whistleblower Office, SPPA," and stated in relevant part:

> The Whistleblower Office has considered your Form 211, Application
> for Award for Original Information, dated 08/05/2019 * * * The

Whistleblower Office has made a final decision to reject your claim for an award.

The claim has been rejected because the IRS decided not to pursue the information you provided.[6]

The WBO E-Trak report for each claim number associated with Mr. Rogers' claim lists the date the Letter was issued as the date of "Closure Action." According to the E-Trak reports, the action taken for each claim number was "Claim Rejected: Allegations are not specific, credible, or are speculative." Each report listed "Classification" as the relevant decision maker.

C.      Tax Court Proceedings

Mr. Rogers timely appealed to this Court seeking review of the WBO's award determination under section 7623(b)(4). The petition repeated the allegations from Mr. Rogers' Forms 211 and asserted that the cash and property converted by the target taxpayers were not "taxed appropriately" at the Federal or the State level. Mr. Rogers also requested that the Commissioner produce certain records to facilitate Mr. Rogers' investigation of the target taxpayers, including more than 50 years of tax returns and "Tax and Earnings Statements" for his mother.

---

[6]The Letter also stated: "If you disagree with this determination, you have 30 days from the date of this letter to file a petition with the Tax Court."

The Commissioner filed an answer that did not address certain monetary thresholds under I.R.C. section 7623(b)(5) discussed in greater detail below. The Commissioner subsequently filed a motion for summary judgment under Rule 121, along with a supporting declaration and attachments.[7] Mr. Rogers responded in opposition. On September 28, 2020, the Court held a hearing on the Commissioner's motion in which both parties appeared and were heard. The Commissioner filed a supplement to his motion after the hearing.

## Discussion

### I.    Summary Judgment

The purpose of summary judgment is to expedite litigation and avoid unnecessary trials. Fla. Peach Corp. v. Commissioner, 90 T.C. 678, 681 (1988). Generally speaking, the Court may grant summary judgment when there is no genuine dispute as to any material fact and a decision may be rendered as a matter of law. Rule 121(b); Sundstrand Corp. v. Commissioner, 98 T.C. 518, 520 (1992), aff'd, 17 F.3d 965 (7th Cir. 1994).

The usual summary judgment standard is less apt in a case like this one, where we must confine ourselves to the administrative record to decide whether

---

[7]The declaration and supporting exhibits were lodged with the Court, and the Commissioner simultaneously filed a motion for leave to file under seal the declaration and exhibits to declaration of Keith Dehart in support of respondent's motion for summary judgment. The Court granted the motion to file under seal.

there has been an abuse of discretion.  See Van Bemmelen v. Commissioner,

155 T.C. 64, 78 (2020).  In such a case, generally there will be no trial on the

merits.  Therefore, when we review final agency action under the Administrative

Procedure Act, 5 U.S.C. secs. 551-559, 701-706 (2018), summary judgment serves

as a mechanism for deciding, as a matter of law, whether the agency action is

supported by the administrative record and is not arbitrary, capricious, an abuse of

discretion, or otherwise not in accordance with law.  Van Bemmelen v.

Commissioner, 155 T.C. at 79.

II.     Whistleblower Framework

        A.     Section 7623(a) and (b)

        As we have said, section 7623 provides for awards to whistleblowers who

submit information about third parties who have underpaid their taxes or otherwise

violated the internal revenue laws.  Section 7623(a) authorizes discretionary

payments in certain circumstances, while section 7623(b) provides for

nondiscretionary (i.e., mandatory) awards.  Before an award may be paid, the IRS

generally must proceed with an "administrative or judicial action" and collect

proceeds from the target taxpayer.  See sec. 7623(b)(1); Cohen v. Commissioner,

139 T.C. 299, 302 (2012), aff'd, 550 F. App'x 10 (D.C. Cir. 2014); see also

sec. 7623(a).

Under section 7623(b), the WBO first determines whether a whistleblower is entitled to a mandatory award. If an award is due, then the WBO also determines the amount of the award. See sec. 7623(b)(1), (2), and (3). This Court has jurisdiction to review the WBO's determinations under section 7623(b), including determinations that no award is due. See sec. 7623(b)(4); Lacey v. Commissioner, 153 T.C. 146, 169 (2019); see also Cooper v. Commissioner, 135 T.C. 70, 75-76 (2010). We do not, however, have authority to order the IRS to commence an administrative or judicial action or to review its determination of the alleged tax liability to which a whistleblower's claim pertains. See Lacey v. Commissioner, 153 T.C. at 166; see also Cohen v. Commissioner, 139 T.C. at 302 (citing Cooper v. Commissioner, 136 T.C. 597, 600 (2011)).

In addition, this Court generally does not review award determinations that have been properly made under section 7623(a) as opposed to section 7623(b). Section 7623(a) applies if certain monetary thresholds under section 7623(b) are not met.[8] Those thresholds provide that section 7623(b), rather than section 7623(a), applies with respect to any action if the proceeds in dispute exceed

_____

[8]We note that the WBO has a practice of labeling all claims that it believes are purely speculative or do not identify a specific or credible tax issue as section 7623(a) claims, see IRM pt. 25.2.2.7.1(2) (Jan. 12, 2018), but those labels do not preclude our review, see, e.g., Van Bemmelen v. Commissioner, 155 T.C. 64, 71-72 & n.6 (2020).

$2 million, sec. 7623(b)(5)(B), and, for an action against an individual, if the individual's gross income exceeds $200,000 for any taxable year subject to the action, sec. 7623(b)(5)(A); see Smith v. Commissioner, 148 T.C. 449, 461 (2017) (explaining that the $200,000 threshold applies to individuals and the $2 million threshold applies to all taxpayers). We have held, however, that the $2 million threshold set out in section 7623(b)(5)(B) is not jurisdictional. Lippolis v. Commissioner, 143 T.C. 393, 397-398 (2014). Rather, that threshold constitutes an affirmative defense that the Commissioner must raise in his answer and with respect to which the Commissioner bears the burden of proof. See id. at 400. Our reasoning and conclusions in Lippolis apply with equal force to the $200,000 threshold, and we now hold that section 7623(b)(5)(A) likewise is not jurisdictional. Accordingly, if the Commissioner wishes to argue that we are precluded from reviewing a determination based on either of the monetary thresholds under section 7623(b)(5), he must so allege in his answer and must satisfy his burden of proof.

B. Rejections and Denials

The statutory provisions governing whistleblower awards are succinct, and the Department of the Treasury and the IRS have adopted regulations supplementing the statutory scheme. As relevant to our decision, the regulations

provide for two distinct types of determinations that result in no award: rejections and denials. We describe each type of determination in greater detail below.

### 1. Rejection

The regulations establish certain minimum criteria that apply to all whistleblower claims. In particular, section 301.7623-1(b), Proced. & Admin. Regs., describes which individuals are eligible to file a claim (i.e., it addresses the "Who may file?" question), while section 301.7623-1(c), Proced. & Admin. Regs., describes the information each claim should include (i.e., it addresses the "What information must be submitted?" question). Among other things, a claim generally must (1) include specific, credible, and nonspeculative information that the whistleblower believes will lead to collected proceeds, (2) report a failure to comply with the internal revenue laws and identify the person(s) believed to have failed to comply with the internal revenue laws, and (3) provide substantive information in support of the whistleblower's allegations, including all available documentation. See sec. 301.7623-1(c)(1), (4), Proced. & Admin. Regs.; see also Lacey v. Commissioner, 153 T.C. at 160. For these purposes, a claim is considered purely speculative if it lacks any basis or support for its allegations. See Lacey v. Commissioner, 153 T.C. at 161.

Under the regulations, "[a] rejection is a determination that relates solely to the whistleblower and the information on the face of the claim that pertains to the whistleblower." Sec. 301.7623-3(c)(7), Proced. & Admin. Regs.; see also Internal Revenue Manual ("IRM") pt. 25.2.1.1.3(7) (Apr. 29, 2019) ("A rejection is a determination that relates to the whistleblower's eligibility to file a claim for award, or the submission of information and claims for award (i.e., the claim did not contain a tax issue, the information on the Form 211 was not specific/credible information, the claim was purely speculative in nature, or the Service was unable to identify the taxpayer based on the information provided by the whistleblower).").[9] Accordingly, and as provided in the regulations, a rejection is appropriate when a whistleblower's claim fails to comply with the threshold requirements as to who may submit a claim or what information the claim must include. See sec. 301.7623-1(b), (c)(4), Proced. & Admin. Regs.; see also sec. 301.7623-3(b)(3), Proced. & Admin. Regs.

---

[9]The definition of "rejection" in the current IRM is identical to the 2019 version. See IRM pt. 25.2.1.1.3(7) (May 28, 2020). We note that the provisions of the IRM can be instructive in understanding the IRS' interpretation of a statute, see Ginsburg v. Commissioner, 127 T.C. 75, 87 (2006), and in ascertaining the procedures the IRS expects its employees to follow, see Wadleigh v. Commissioner, 134 T.C. 280, 294 (2010). The IRM, however, does not have the force of law. See Marks v. Commissioner, 947 F.2d 983, 986 n.1 (D.C. Cir. 1991), aff'g T.C. Memo. 1989-575; Vallone v. Commissioner, 88 T.C. 794, 807 (1987).

Congress has entrusted to the WBO the initial evaluation of whistleblower claims to determine whether they satisfy the minimum standards for an award.[10] See Tax Relief and Health Care Act of 2006, Pub. L. No. 109-432, sec. 406(b)(1)(B), 120 Stat. at 2960 (providing that the WBO "shall analyze information received from any individual * * * and either investigate the matter itself or assign it to the appropriate Internal Revenue Service office"); see also sec. 301.7623-1(c)(4), Proced. & Admin. Regs. Accordingly, the WBO determines whether a claim should be rejected on its face or whether further consideration is warranted.

If a claim fails to meet the threshold criteria, depending on the circumstances, the WBO may choose to notify the whistleblower of any deficiencies and give him an opportunity to perfect the claim before the WBO takes further action.[11] See sec. 301.7623-1(c)(4), Proced. & Admin. Regs. Once the WBO determines that it will reject a claim, what happens next turns on whether the claim is subject to section 7623(a) or section 7623(b). If the claim is subject to

---

[10]As noted above, see supra note 3, the claim evaluation function of the WBO is now shared by the SBSE operating division.

[11]This opportunity is available only if the deficiency relates to the contents of the claim (i.e., the "what" question under section 301.7623-1(c)(1), (2), or (3), Proced. & Admin. Regs.), as opposed to the eligibility of the whistleblower (i.e., the "who" question under section 301.7623-1(b), Proced. & Admin. Regs.). See sec. 301.7623-1(c)(4), Proced. & Admin. Regs.

section 7623(a), the WBO provides written notice to the whistleblower stating the basis for the rejection without sending a preliminary rejection letter. Sec. 301.7623-3(b)(3), Proced. & Admin. Regs. If the WBO instead determines that it will reject a claim under section 7623(b), it commences a "whistleblower administrative proceeding" by sending the whistleblower a preliminary rejection letter that states the basis for the rejection and invites the whistleblower to submit comments. Sec. 301.7623-3(c)(7), Proced. & Admin. Regs. The WBO reviews all comments timely submitted by the whistleblower and, if it still believes that a rejection is appropriate, provides written notice of the rejection to the whistleblower, again with an explanation. Id. When a claim (whether under section 7623(a) or section 7623(b)) is rejected for failure to meet threshold criteria other than those relating to the eligibility of the whistleblower under section 301.7623-1(b), Proced. & Admin. Regs., the regulations provide that the whistleblower has a post-rejection opportunity to "perfect and resubmit the claim." See sec. 301.7623-1(c)(4), Proced. & Admin. Regs.; see also Lacey v. Commissioner, 153 T.C. at 161-162.

2.    Denial

A "denial" is fundamentally different from a "rejection."  Under the regulations, "[a] denial is a determination that relates to or implicates taxpayer information."  Sec. 301.7623-3(c)(8), Proced. & Admin. Regs.; see also IRM pt. 25.2.1.1.3(3) ("A denial is a determination that is made for reasons beyond the information contained on the Form 211. [sic] (e.g., the Service did not proceed based on the information provided by the whistleblower, the case was surveyed or no changed by the operating division, the issue(s) alleged by the whistleblower were no change issues, the issues alleged by the whistleblower were below threshold, the statute has expired on the issues raised by the whistleblower, there are no collected proceeds).").[12]  The WBO's denial of a claim indicates that "the IRS either did not proceed based on the information provided by the whistleblower * * * or did not collect proceeds" as a result of proceeding against the taxpayer on the basis of the whistleblower's information.  Sec. 301.7623-3(c)(8), Proced. & Admin. Regs.; see also sec. 301.7623-3(b)(3), Proced. & Admin. Regs.; T.D. 9687, 2014-36 I.R.B. 486, 500 ("[A] denial often relates to or implicates taxpayer information (for example, because the IRS did not proceed based on the information provided or did not collect any proceeds).").  Accordingly, a denial is a

_____

[12]The definition of "denial" in the current IRM is materially identical to the 2019 version.  See IRM pt. 25.2.1.1.3(3) (May 28, 2020).

determination that is made after the WBO engages in some substantive consideration beyond the face of a claim. See Lacey v. Commissioner, 153 T.C. at 161-162, 168.

The WBO handles a denial of a claim similarly to a rejection. In the case of a denial under section 7623(a), the WBO provides written notice of the denial to the whistleblower, but does not state the basis for the denial.[13] See sec. 301.7623-3(b)(3), Proced. & Admin. Regs. In the case of a denial under section 7623(b), the WBO sends the whistleblower a preliminary denial letter that states the basis for the denial and invites the whistleblower to submit comments, which starts the whistleblower administrative proceeding to which the whistleblower is entitled (similar to that afforded in the case of a rejection under section 7623(b)).

_____

[13]This provision of notice does not start a whistleblower administrative proceeding. The preamble to the final regulations explains that

> Treasury and the IRS considered whether to make denials of claims under section 7623(a) subject to an administrative proceeding similar to the denial of claims under section 7623(b). However, given the nature of claims under section 7623(a) and the large number of such claims, Treasury and the IRS determined that the administrative burden of providing an administrative proceeding would significantly outweigh the small amount of additional information that would be provided in the denial letters. We note, however, that the same section 6103 concerns are not present with rejection letters. Accordingly, in the case of a rejection under section 7623(a) or (b), the written notice is not subject to the same limitations under section 6103 and will explain the basis for the rejection. * * * [T.D. 9687, 2014-36 I.R.B. 486, 500.]

Sec. 301.7623-3(c)(8), Proced. & Admin. Regs. The WBO considers any timely response from the whistleblower and, if it still believes a denial is appropriate, provides written notice to the whistleblower so stating, including the basis for its determination. Because a denial is based on factors beyond deficiencies on the face of the whistleblower's claim, the regulations do not provide the whistleblower an opportunity to perfect his claim after a denial. Compare id. paras. (b)(3), (c)(8), with sec. 301.7623-1(c)(4), Proced. & Admin. Regs.

III.    Standard and Scope of Review

Section 7623(b)(4) provides that "[a]ny determination regarding an award" under section 7623(b) may be "appealed to the Tax Court (and the Tax Court shall have jurisdiction with respect to such matter)." We review the WBO's determinations regarding an award for abuse of discretion. See Kasper v. Commissioner, 150 T.C. at 22-23. Abuse of discretion exists when a determination is arbitrary, capricious, or without sound basis in fact or law. See Murphy v. Commissioner, 125 T.C. 301, 320 (2005), aff'd, 469 F.3d 27 (1st Cir. 2006). An agency's failure to follow its own regulations typically is an abuse of discretion. See Fort Stewart Sch. v. FLRA, 495 U.S. 641, 654 (1990) ("It is a familiar rule of administrative law that an agency must abide by its own regulations." (citing Vitarelli v. Seaton, 359 U.S. 535, 547 (1959) (Frankfurter, J., concurring in part,

dissenting in part), and <u>Service v. Dulles</u>, 354 U.S. 363, 388 (1957))); <u>Reuters Ltd. v. FCC</u>, 781 F.2d 946, 947 (D.C. Cir. 1986) ("A precept which lies at the foundation of the modern administrative state is that agencies must abide by their rules and regulations."); <u>Blanton v. Office of the Comptroller of the Currency</u>, 909 F.3d 1162, 1176 (D.C. Cir. 2018) (citing <u>Reuters</u>); <u>see also</u> <u>Patton v. Commissioner</u>, 116 T.C. 206, 210 (2001) ("[The Commissioner] is required to follow the statute and abide by regulations reasonably based on the statute, and failure to do so will amount to an abuse of discretion." (citing <u>Lansons, Inc. v. Commissioner</u>, 622 F.2d 774, 776 (5th Cir. 1980), <u>aff'g</u> 69 T.C. 773 (1978), and <u>Buzzetta Constr. Corp. v. Commissioner</u>, 92 T.C. 641, 647 (1989))).

In ascertaining whether the WBO abused its discretion, we generally confine our review to the administrative record. <u>See</u> <u>Kasper v. Commissioner</u>, 150 T.C. at 20. In the whistleblower context, the administrative record consists of "all information contained in the administrative claim file that is relevant to the award determination and not protected by * * * privileges." Sec. 301.7623-3(e)(1), Proced. & Admin. Regs.

The Supreme Court has held that "a reviewing court, in dealing with a determination or judgment which an administrative agency alone is authorized to make, must judge the propriety of such action solely by the grounds invoked by the

agency." Chenery II, 332 U.S. at 196 (summarizing the holding of Chenery I, 318

U.S. 80). Consequently, we held in Kasper v. Commissioner, 150 T.C. at 23-24:

> Under the Chenery doctrine we can uphold the WBO's determination only on the grounds it actually relied on when making its determination. * * * This means that the WBO must clearly set forth the grounds on which it made its determination, so that we don't have to guess. See * * * [Chenery II, 332 U.S. at 196]. We cannot uphold the WBO's determination "simply because findings might have been made and considerations might be disclosed which might justify his ultimate conclusion." Antioco[ v. Commissioner, T.C. Memo. 2013-35], at *25 (citing Chenery I, 318 U.S. at 93-94).

Thus, our Court reviews a WBO determination by reference to the grounds

that it states, not by reference to post hoc rationalizations. Lacey v. Commissioner,

153 T.C. at 165. In performing this analysis, we may consider any

"contemporaneous explanation of the agency decision" contained in the record.

Tourus Records, Inc. v. DEA, 259 F.3d 731, 738-740 (D.C. Cir. 2001) (quoting

Camp v. Pitts, 411 U.S. 138, 143 (1973)) (deciding not to remand a case involving

a letter with an insufficient explanation of an agency's action because the record

contained contemporaneous explanations of the agency's decision-making

rationale). We will "uphold a decision of less than ideal clarity if the agency's path

may reasonably be discerned." Bowman Transp., Inc. v. Ark.-Best Freight Sys.,

Inc., 419 U.S. 281, 286 (1974).

If the Court decides that the WBO abused its discretion in rejecting or denying a whistleblower's claim, then we can remand the case for further consideration. See Lacey v. Commissioner, 153 T.C. at 165, 172-173; Whistleblower 769-16W v. Commissioner, 152 T.C. 172, 181-182 (2019) (holding that the Tax Court may in appropriate circumstances remand a whistleblower case to the WBO for further consideration); see also Fla. Power & Light Co. v. Lorion, 470 U.S. 729, 744 (1985) ("If the record before the agency does not support the agency action, if the agency has not considered all relevant factors, or if the reviewing court simply cannot evaluate the challenged agency action on the basis of the record before it, the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation.").

IV.    Applying the Standards to the Commissioner's Motion

A.    Section 7623(b)(5)

As we have discussed, section 7623(b) authorizes our review of WBO determinations when two monetary thresholds set out in section 7623(b)(5) are satisfied. We therefore begin with a procedural question: Are we precluded from reviewing Mr. Rogers' petition because the record does not establish that the action here satisfies the monetary thresholds? We conclude that the answer is no.

As we held in Part II.A, neither of the monetary thresholds set out in section 7623(b)(5) is jurisdictional. Therefore, if the Commissioner wishes to argue that one or both of the thresholds precludes our review, he must so allege in his answer and satisfy his burden of proof. The Commissioner has not done so here, and we therefore proceed to consider the merits.

B.      Abuse of Discretion

1.      The WBO Letter

Under Chenery I, 318 U.S. at 89, we judge agency action "by the standards which the * * * [agency] itself invoked." See also Chenery II, 332 U.S. at 196. Accordingly, in reviewing the WBO's action in this case, we turn first to its determination: the Letter mailed to Mr. Rogers. The WBO Letter was titled "Final Decision Under Section 7623(a)" and stated in relevant part:

> The Whistleblower Office has made a final decision to <u>reject</u> your claim for an award.
>
> The claim has been <u>rejected</u> because the IRS <u>decided not to pursue the information you provided</u>. [Emphasis added.]

On its face, the Letter states that the WBO is rejecting Mr. Rogers' claim. But the WBO Letter fails to include any rationale that would support a rejection under the regulations. See sec. 301.7623-1(b)(2), (c)(4), Proced. & Admin. Regs. (stating that a whistleblower claim may be rejected for violating specified

minimum criteria); see also IRM pt. 25.2.1.1.3(7) (stating that a rejection is appropriate if a claim does not raise a tax issue or is purely speculative, the information on the Form 211 is not specific or credible, or the IRS is unable to identify the taxpayer based on the claim).  The Letter identifies no deficiencies with respect to the "who" or "what" questions addressed in the regulations.  See sec. 301.7623-1(b)(2), (c), Proced. & Admin. Regs.  Put another way, the WBO Letter does not say that Mr. Rogers is an impermissible whistleblower.  See id. para. (b)(2) (setting out the "who" requirements).  Nor does the Letter say that the materials he submitted fell short of providing the information the regulations required.  See id. para. (c) (setting out the "what" requirements).  The WBO Letter does not address any shortcomings on Mr. Rogers' part, which is the focus of a rejection inquiry under the regulations.  Sec. 301.7623-3(c)(7), Proced. & Admin. Regs. ("A rejection is a determination that relates solely to the whistleblower and the information on the face of the claim that pertains to the whistleblower."); see also IRM pt. 25.2.1.1.3(7) ("A rejection is a determination that relates to the whistleblower's eligibility to file a claim for award, or the submission of information and claims for award[.]").

Rather than focusing on the whistleblower and explaining what he failed to do, as required by the rejection rules under the regulations, the WBO Letter

switches its focus to the agency itself and what the agency chose to do. Thus, the Letter tells Mr. Rogers that "the IRS decided not to pursue the information you provided." While this may be a plausible explanation for a denial, it does not explain the basis of a rejection.[14] A decision "not to pursue" (i.e., "not to proceed") is a quasi term of art. See sec. 301.7623-3(c)(8), Proced. & Admin. Regs. (providing for "denial" where "the IRS * * * did not proceed based on the information provided by the whistleblower"); see also sec. 301.7623-2(b)(1), Proced. & Admin. Regs. (noting that the IRS "proceeds based on information" when it "continues to pursue an ongoing action" that it would not otherwise have "continued to pursue" (emphasis added)); sec. 301.7623-3(b)(3), Proced. & Admin. Regs. (describing a denial for purposes of section 7623(a)). It does not support rejections.

In short, the regulatory framework gave the WBO two distinct paths for action--rejection or denial. Having come to that "fork in the road," the WBO Letter followed Yogi Berra's advice and "took it." The Yankee great's suggestion was sound in context, as both prongs of the fork led to his home. But with respect to a whistleblower award, the two prongs of the regulations lead to very different

---

[14]When a claim is rejected, it is inevitable that the IRS does not "pursue the [whistleblower's] information" (as the WBO's Letter states) nor pursue a target on the basis of that information, but to say so does not provide a reason supporting a rejection.

places. By including the "decided not to pursue" rationale as the reason for its purported rejection, the WBO Letter in effect said to Mr. Rogers "we reject your claim because we are denying the claim." This statement was self-contradictory-- and therefore impermissible--under the regulations.

We assume that WBO personnel are familiar with the rejection and denial categories set out in the regulations and thus are puzzled by the Letter's apparent disregard of them.[15] But, in any event, we will not attempt "to chisel that which must be precise from what the agency has left vague and indecisive." Chenery II, 332 U.S. at 197. The Commissioner has moved for summary judgment; he has the burden of showing that the WBO's determination is supported by the administrative record and is not arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law. See Van Bemmelen v. Commissioner, 155 T.C. at 78-79. Based on the contents of the WBO's Letter alone, we are

---

[15]Apparently we are not alone in being puzzled by some of the WBO's communications, as that Office recently acknowledged. See WBO Mem. No. WO-25-0621-0001 (June 1, 2021) (recounting "confusion where whistleblowers have submitted letters, inquiries, and complaints" because of the rejection of claims and describing revisions to internal WBO guidance to instruct classifiers and subject matter experts who review whistleblower claims "not [to] use the terms 'reject' or 'rejection' when providing feedback for their decision to decline to forward the whistleblower claim to the operating division's audit/investigation function for action," although the "[f]eedback must [continue to] state the basis or rationale for not taking action on the claim").

unable to grant the Commissioner's motion.  See <u>Reuters</u>, 781 F.2d at 950-951; <u>Patton v. Commissioner</u>, 116 T.C. at 210.

>2.    <u>The Administrative Record</u>

This conclusion does not end our inquiry.  Consistent with <u>Chenery I</u>, a determination letter that is silent or muddled with respect to a supportable rationale may still be sustained if other materials in the record clarify the agency's reasoning.  See <u>Tourus Records</u>, 259 F.3d at 738-740 (agency decision was adequately supported because the record included contemporaneous explanations of the agency's decision-making rationale); <u>Kasper v. Commissioner</u>, 150 T.C. at 24-25 (evidence from an operating division classifier adequately explained claim's rejection).[16]  Such materials cannot suggest "<u>post hoc</u> rationalizations for agency action," but are acceptable if they offer "contemporaneous explanation[s] of the agency decision."  <u>Kasper v. Commissioner</u>, 150 T.C. at 24-25 (quoting <u>Tourus Records</u>, 259 F.3d at 738); <u>see also</u> <u>Olivares v. TSA</u>, 819 F.3d 454, 463-464 (D.C. Cir. 2016) (materials that were before the agency at the time of its determination, plus an affidavit that clarified the materials, could be considered by the court).

---

[16]<u>See also</u> <u>Waszczuk v. Commissioner</u>, T.C. Memo. 2020-75, at *12 (classifier's findings supported the WBO's stated grounds for rejecting a claim).

For example, in <u>Tourus</u>, 259 F.3d at 733, the Drug Enforcement Agency ("DEA") announced in a letter that it was denying a petition for waiver of a bond requirement because the petitioner's "Affidavit of Indigency" was "not adequately supported." Noting that the letter on its own was insufficient to sustain the DEA's determination because it failed to explain the DEA's reasoning, <u>id.</u> at 737 (citing <u>Roelofs v. Sec'y of the Airforce</u>, 628 F.2d 594, 599 (D.C. Cir. 1980)), the U.S. Court of Appeals for the District of Columbia Circuit went on to consider agency memoranda that in that court's view filled the gap left by the DEA's letter, <u>id.</u> at 738-739. We note two key distinctions between <u>Tourus</u> and this case. First, the regulation the court considered in <u>Tourus</u> required the DEA to waive the bond requirement "[u]pon satisfactory proof of financial inability to post the bond," but did not elaborate on the permissible reasons for such a determination or otherwise constrain the DEA's decision making. <u>See id.</u> at 735-736 (quoting 19 C.F.R. sec. 162.47(e) (2000)). By contrast, the regulations under section 7623 describe in detail the two types of determination available to the WBO when it declines to issue an award (rejection and denial), as well as the circumstances that justify each type of determination. Second, while the D.C. Circuit viewed the letter in <u>Tourus</u> essentially as silent as to the rationale for the agency's decision, the letter here does provide a rationale. But that rationale, as discussed above, does not support the

determination (a rejection) reflected in the WBO's Letter. Thus, the facts here are materially different from those that were before the D.C. Circuit in Tourus.

Nevertheless, based on Tourus and the other authorities we have cited, we will evaluate the WBO's determination by looking beyond the four corners of the Letter to consider the record more broadly. The purpose of this inquiry is to determine whether any aspects of the record provide a basis for changing our initial evaluation of the WBO's decision. As we describe below, we find no such basis here.

Rather than filling a gap left open by the WBO Letter, the administrative record contradicts the rationale that the WBO provided to Mr. Rogers. Specifically, the record indicates that multiple reviewers recommended the rejection of Mr. Rogers' claim based on the minimum threshold criteria established by the regulations. For example, the SBSE classifier's classification sheets made the following recommendation: "Reject the Claim: Allegations are not specific, credible, or are speculative--Allegations are not credible." This statement mirrors the requirements of section 301.7623-1(c)(1), Proced. & Admin. Regs., which mandates that whistleblower claims include "specific and credible information" and states: "Submissions that provide speculative information or that do not provide specific and credible information * * * do not provide a basis for an

award." See also sec. 301.7623-1(c)(4), Proced. & Admin. Regs. (stating that a claim may be rejected if it fails to provide specific and credible information as described in paragraph (c)(1)); IRM pt. 25.2.1.1.3(7) (stating that a rejection is appropriate if a claim is purely speculative or is not specific or credible). The classification sheets even cite the regulations in the section labeled "Basis for the Recommendation," which includes the following explanation:

> Failure to provide substantive information, if available, to support the allegation. Rejecting claim per Treas. Reg. 301[.]7623-1(c)(1) for failing to include specific and credible information to support a potential tax violation/allegation, as well as documentation to support the claim.

The sheets elaborated that Mr. Rogers failed to provide documentation and "did not provide a breakdown of the years and how much money was benefitted to TP per year." See sec. 301.7623-1(c)(1), Proced. & Admin. Regs. (stating that whistleblower claims "should provide substantive information, including all available documentation, that supports the whistleblower's allegations"). The SBSE classifier, therefore, could have hardly been clearer in recommending a rejection for the reasons stated in subparagraphs (1) and (4) of section 301.7623-1(c), Proced. & Admin. Regs.[17]

---

[17]We note that, in making his recommendation, the SBSE classifier appears to have considered information beyond the four corners of Mr. Rogers' claim. He also reviewed the tax histories of the target taxpayers. One might ask whether this
(continued...)

After the SBSE classifier's review, a WBO technician drafted the ARM--addressed to a WBO supervisor--which similarly recommended that the WBO "reject" Mr. Rogers' claim. The ARM explained that the claim had been "[r]ecommended for rejection by classification" and recited the same bases for the recommendation that appeared in each of SBSE's classification sheets. The WBO E-Trak reports associated with Mr. Rogers' claim were consistent with the ARM, stating that the action taken for each claim number was "Claim Rejected: Allegations are not specific, credible, or are speculative," again mirroring the

---

[17](...continued)
kind of additional research, potentially implicating taxpayer information within the meaning of section 301.7623-3(c)(8), Proced. & Admin. Regs., suggests that a denial, rather than a rejection, could have been appropriate. We do not think, however, that the limited inquiry performed by the SBSE classifier in this case was inconsistent with a rejection determination, particularly when his recommendation was expressly based on the regulatory criteria for rejections. Compare Kansky v. Commissioner, T.C. Memo. 2020-43 (concluding the WBO did not abuse its discretion in rejecting a claim after review of IRS internal records), with Frantz v. Commissioner, T.C. Memo. 2020-64 (concluding the WBO did not abuse its discretion in denying a claim after review of IRS internal records). After a review of Mr. Rogers' claim, it made perfect sense for the SBSE classifier to check for anything obviously amiss in the histories of the target taxpayers. Finding nothing that changed his assessment of the claim, the SBSE classifier was free to recommend its rejection for the reasons he stated. The Commissioner appears to agree that limited research of this kind does not require a denial rather than a rejection. See, e.g., IRM pt. 25.2.1.3.2(4) (May 28, 2020) (directing classifiers to use all available resources, including databases with target tax histories, in evaluating any whistleblower claim).

requirements of section 301.7623-1(c)(1) and (4), Proced. & Admin. Regs.[18]  But none of these reasons was included in the WBO's Letter.

Instead, in a situation where only two paths were available to the WBO (reject or deny), the WBO Letter purported to adopt the former using a justification for the latter.  At best, this mixup betrays confusion in the mind of the ultimate decision maker, whether with respect to the requirements of the regulations, the recommendations made by the SBSE classifier and the WBO technician, or both.

The supporting declaration from Mr. Dehart, the WBO supervisor, perpetuates the confusion.  Mr. Dehart, to whom the ARM was addressed, states that both the SBSE classifier and the WBO technician recommended rejecting Mr. Rogers' claim.  This statement at least comports with our reading of the record.  But Mr. Dehart elaborates that the WBO technician's recommendation was based on "the IRS Operating Division's decision not to pursue petitioner's Form 211 information."  Like the WBO Letter, therefore, Mr. Dehart's declaration attributes to the SBSE classifier a decision the SBSE classifier never made--and that the record does not suggest he made--namely, the decision not to pursue Mr. Rogers' claim within the meaning of section 301.7623-3(c)(8), Proced. &

---

[18]Each report listed "Classification" as the relevant decision maker.

Admin. Regs., as opposed to rejecting it simply based on the minimum threshold criteria.[19]

The self-contradiction reflected in the WBO Letter leaves us unable to "reasonably * * * discern[]" the WBO's path. Bowman Transp., Inc., 419 U.S. at 286. What we can discern is that, at every step before the WBO's ultimate decision, IRS employees recommended the rejection of Mr. Rogers' claim because it failed to satisfy the minimum threshold criteria established by the regulations. Given the rationale stated in the WBO Letter, however, the ultimate decision maker appears to have opted to base his decision on an alternative ground. Thus, this is not a case in which the determination letter is silent or muddled, but the administrative record clears up the confusion. See, e.g., Tourus Records, 259 F.3d 731. Rather, the WBO's selection of its particular rationale, expressly tied to a denial by the regulations, conflicts with the recommendations that it received.

The Commissioner's explanation of the WBO's rationale does more harm than good to his case. The Commissioner maintains that the WBO intentionally selected the "decided not to pursue" formulation (rather than relying on regulatory criteria invoked by the SBSE classifier and WBO technician) because the WBO

---

[19]Mr. Dehart continues on to say that none of Mr. Rogers' Forms 211 were forwarded to an IRS examiner for possible action and that the ICE Team "rejected petitioner's claim." But these statements are unhelpful in reconciling Mr. Dehart's other comments with the record and the WBO Letter.

wanted to avoid suggesting that Mr. Rogers could perfect his claim by submitting additional information. As already discussed, when a claim is rejected (and not denied), the regulations state that a whistleblower "may [that is, he is permitted to] perfect and resubmit" his claim if the rejection is premised on a lack of adequate explanation or documentation. See sec. 301.7623-1(c)(4), Proced. & Admin. Regs. That option is foreclosed when a claim is denied. Here, the Commissioner tells us that the formulation reflected in the WBO Letter was intended to signal to Mr. Rogers that he was not entitled to perfect his claim.[20] But the WBO is not free to take away with double speak rights that the regulations plainly provide. See Blanton, 909 F.3d at 1176; Reuters, 781 F.2d at 951. Under section 301.7623-1(c)(4), Proced. & Admin. Regs., Mr. Rogers was entitled to perfect his claim if it was rejected because it was speculative, was not specific or credible, or failed to provide other information required by the regulations. See Lacey v.

---

[20]Specifically, the Commissioner states,

The regulations leave the * * * [WBO] discretion to (1) invite the whistleblower to perfect a claim and (2) reject a claim on a basis that would allow the whistleblower to seek to perfect or a basis that would not allow the whistleblower to seek to perfect. Here, the * * * [WBO] considered the information provided and the IRS Operating Division's enforcement decision, and, ultimately, decided to reject on a basis that does not allow for perfection--because the IRS decided not to pursue the whistleblower's information. [Respondent's First Supplement to Motion for Summary Judgment, para. 33.]

Commissioner, 153 T.C. at 161-162. The WBO failed to provide Mr. Rogers with this opportunity.

As the Supreme Court recently observed: "If men must turn square corners when they deal with the government, it cannot be too much to expect the government to turn square corners when it deals with them." Niz-Chavez v. Garland, 593 U.S. ___, ___, 141 S. Ct. 1474, 1486 (2021). We cannot countenance intentional obfuscation on the part of the WBO. And neither the WBO Letter alone nor the Letter coupled with the administrative record here provides a coherent account of the WBO's determination that is consistent with the regulations. That, in turn, represents an abuse of discretion, and accordingly we must deny the Commissioner's motion.

### 3. The Commissioner's Additional Arguments

In his motion and the supplement to his motion, the Commissioner attempts to rescue the WBO's determination by offering three additional arguments. We address each in turn.

#### a. Rejection Determination

First, the Commissioner contends that the WBO correctly rejected Mr. Rogers' claim because it based its determination on the SBSE classifier's recommendation and the contents of the claim alone. We need not tarry long on

this argument as we have addressed it extensively above.  See supra Part IV.B.1

and 2.  But we do wish to highlight a few points.

The Commissioner cites section 301.7623-3(c)(7), Proced. & Admin. Regs.,

and contends that a rejection was appropriate here because both the WBO's

determination and the SBSE classifier's recommendation were based on the face of

Mr. Rogers' claim and not on any information beyond the claim.  In the case of the

SBSE classifier, the Commissioner points to the reasons enumerated in the

classification sheets (e.g., that Mr. Rogers' claim was not specific or credible or

was speculative and that Mr. Rogers failed to provide documentation) as

supporting the proposition that the classifier based his recommendation on the face

of Mr. Rogers' claim.  With respect to the WBO's determination, however, the

Commissioner simply states, without providing further support, that "[u]pon

receiving [the] SBSE Classifier['s] * * * recommendation, the * * * [WBO] did

not go beyond the face of the claim made by the petitioner in making the

determination to reject the claim."[21]  Respondent's First Supplement to Motion for

Summary Judgment, para. 25.

---

[21]Elsewhere in his supplement, the Commissioner cites the "Entire
Administrative Record" as support for the proposition that the WBO rejected
Mr. Rogers' claim based on his information submission and not any information
beyond the claim.  But the Commissioner does not point to any specific evidence
that supports this theory.

The Commissioner's argument is unpersuasive. To the extent the Commissioner contends that a rejection would have been the correct determination under the regulations based on the information available to the WBO, that argument does not establish what the WBO actually did. We agree in light of the record that the SBSE classifier and the WBO technician based their recommendations on the face of Mr. Rogers' claim. But we have no way of knowing that the determination by the WBO was similarly limited. As we have discussed, the rationale selected by the WBO to explain its determination was different from the rationale offered by the SBSE classifier and the WBO technician and does not specify what the WBO considered. The Commissioner appears to acknowledge as much in his supplement, stating that "[w]hile [the] SBSE classifier * * * referenced Treas. Reg. § 301.7623-1(c) in his analysis, this was not the ultimate rationale provided by the * * * [WBO] for its rejection." Id. para. 23 n.7. As much as the Commissioner might wish us to, we cannot attribute the SBSE classifier's reasoning to the WBO's ultimate decision maker when that individual specifically (and, according to the Commissioner, intentionally) selected a different rationale. See Kasper v. Commissioner, 150 T.C. at 23 (in reviewing a WBO determination we consider only the grounds the WBO actually relied on when making the determination); see also Chenery I, 318 U.S. at 94 (we cannot uphold a

determination "merely because findings might have been made and considerations disclosed which would justify * * * [the determination]").

The Commissioner also argues that the inclusion of the phrase "decided not to pursue" in the WBO Letter supports his contention that the WBO rejected Mr. Rogers' claim. The Commissioner concedes that a decision not to <u>proceed</u> based on a whistleblower's information would constitute a denial under section 301.7623-3(c)(8), Proced. & Admin. Regs., but contends that a decision not to <u>pursue</u> a claim is distinct from a decision not to proceed. We see no daylight between the two phrases.

The Commissioner is correct that the phrase "did not proceed based on" is defined in the regulations and specifically cited as an example of a denial in section 301.7623-3(c)(8), Proced. & Admin. Regs. But he should have read the regulations more closely. Section 301.7623-2(b)(1), Proced. & Admin. Regs., which defines the phrase "proceeds based on," states as follows:

> For purposes of section 7623(b) and §§ 301.7623-1 through 301.7623-4, the IRS proceeds based on information provided by a whistleblower when the information provided substantially contributes to an action against a person identified by the whistleblower. For example, the IRS proceeds based on the information provided when the IRS initiates a new action, expands the scope of an ongoing action, or <u>continues to pursue an ongoing action</u>, that the IRS would not have initiated, expanded the scope of, <u>or continued to pursue</u>, but for the information provided. The IRS does not proceed based on information when the IRS analyzes the

> information provided or investigates a matter raised by the information provided. [Emphasis added.]

Under the regulations, therefore, a decision to pursue an action is equivalent to a decision to proceed, see id., and a decision not to proceed is grounds for a denial, see sec. 301.7623-3(c)(8), Proced. & Admin. Regs.; see also IRM pt. 25.2.1.1.3(3). These rules flatly contradict the Commissioner's contention that an IRS "deci[sion] not to pursue" a claim would support a rejection instead of a denial under the regulations.[22]

### b.     Not an Abuse of Discretion

The Commissioner next contends that the WBO did not abuse its discretion when it rejected Mr. Rogers' claim based on a "dec[ision] not to pursue," because the regulations allow for rejections other than those based on the minimum threshold criteria of section 301.7623-1(b) and (c), Proced. & Admin. Regs. More specifically, the Commissioner acknowledges that the regulations do not mention a decision not to pursue a claim as a potential reason for rejecting (as opposed to denying) the claim, but argues that the regulations in this area are illustrative, not exclusive, and a rejection need not reference any specific criteria. The

---

[22]We note that the Commissioner does not request deference under Auer v. Robbins, 519 U.S. 452 (1997), on this or any other point, perhaps because he recognizes that he would be unable to satisfy the standard articulated by the Supreme Court in Kisor v. Wilkie, 588 U.S. ___, ___, 139 S. Ct. 2400, 2415-2418 (2019).

Commissioner further contends that rejections for reasons not referenced in the regulations are exempt from the requirements of section 301.7623-1(c)(4), Proced. & Admin. Regs. (providing a whistleblower with the opportunity to perfect his claim in certain circumstances), and section 301.7623-3(c)(7), Proced. & Admin. Regs. (defining "rejection" and setting out certain procedural rules that apply to rejections under section 7623(b)).

In light of the discussion above, we need not determine whether there is any case in which the WBO could reject a claim on grounds other than the minimum criteria set out in the regulations.[23] Rather, it suffices to say that the rationale chosen by the WBO in this case was incompatible with a rejection, and therefore we cannot sustain it.

---

[23]The regulations at several points describe rejections of claims "pursuant to § 301.7623-1(b) or (c)" without mentioning rejections on other grounds. See sec. 301.7623-3(b)(3), (c)(7), Proced. & Admin. Regs. (providing procedures for rejecting claims "pursuant to § 301.7623-1(b) or (c)"); see also sec. 301.7623-1(c)(4), Proced. & Admin. Regs. (describing procedural requirements for certain rejections pursuant to subparagraphs (1), (2), and (3) of that section). In addition, regulations under section 7623(a) as well as the preamble to the proposed regulations describe the full spectrum of determinations that result in no award as comprising rejections "pursuant to § 301.7623-1(b) or (c)" and denials. See sec. 301.7623-3(b)(3), Proced. & Admin. Regs.; 77 Fed. Reg. 74802 (Dec. 18, 2012); see also T.D. 9687, 2014-36 I.R.B. at 500 (noting that, on this point, the final regulations reflect no substantive changes as compared with the proposed regulations).

### c. Our Authority To Review

Finally, the Commissioner argues that, regardless of the merits of the WBO's determination, we are precluded from reviewing the determination because it reflects an "enforcement decision" by an IRS operating division--i.e., the recommendation of the SBSE classifier. In the Commissioner's view, our Opinion in Lacey v. Commissioner, 153 T.C. 146, which held that the Tax Court has authority to review the WBO's threshold rejection of a whistleblower's claim for abuse of discretion, id. at 166-167, does not affect the rule that we lack authority to review an IRS enforcement decision not to audit a taxpayer's return or otherwise pursue a whistleblower's information, see id. at 163-164; see also Cohen v. Commissioner, 139 T.C. at 302; Cooper v. Commissioner, 135 T.C. at 75-76.

Unlike in Lacey, 153 T.C. at 166-167, where the WBO acted alone, the WBO in this case involved an operating division by transmitting Mr. Rogers' claim to the SBSE classifier for classification. The Commissioner contends that, when the SBSE classifier made his recommendation to reject Mr. Rogers' claim, he made an enforcement decision on behalf of an IRS operating division. Therefore, the Commissioner argues, our Court lacks authority to review the WBO's determination. We disagree.

To begin with, and as already discussed, the Commissioner has not established that the WBO based its determination on the SBSE classifier's recommendation.[24] The Commissioner admits as much, asserting that the SBSE classifier's rationale for rejection "was not the ultimate rationale provided by the * * * [WBO] for its rejection," Respondent's First Supplement to Motion for Summary Judgment, para. 23 n.7, and that the WBO "reject[ed] on a basis that does not allow for perfection--because the IRS decided not to pursue the whistleblower's information," id. para. 33.[25]

Yet, the Commissioner tries to have it both ways. Under his theory, the WBO's reliance on the SBSE classifier was complete enough to shield the WBO's determination from review, but not so complete as to adopt the classifier's rationale. We fail to see how the WBO could have based its decision on the SBSE classifier's recommendation while simultaneously rejecting his reasoning.

---

[24]The SBSE classifier's classification sheets expressly stated that his recommendation was to "Reject the Claim: Allegations are not specific, credible, or are speculative--Allegations are not credible." The SBSE classifier listed the ways Mr. Rogers' claim failed to adhere to the regulations and stated that he recommended "[r]ejecting claim per Treas. Reg. 301[.]7623-1(c)(1) for failing to include specific and credible information to support a potential tax violation/allegation, as well as documentation to support the claim." But the WBO selected a different--and inconsistent--rationale in its Letter.

[25]The Commissioner appears to concede that rejection on the grounds stated by the SBSE classifier would have allowed for perfection.

In any event, the involvement of an IRS operating division does not automatically preclude our review of a WBO determination. The Commissioner is correct that in Lacey this Court distinguished between a rejection determination made by the WBO, on the one hand, and a determination not to proceed with a claim made by an operating division, on the other.[26] However, after the WBO made the decision under review in Lacey, the claim evaluation function of the WBO was realigned: The operation of this function is now shared by the SBSE operating division. Specifically, the version of the IRM that was in effect at the time the WBO considered Mr. Rogers' claim (and that remains in effect today), IRM pt. 1.1.26.1.3.5 (Jan. 11, 2018), states as follows for "Initial Claims Evaluation":

> (1) Effective July 10, 2016, * * * the Initial Claim Evaluation Team (ICE) [of the WBO], was realigned to Small Business/Self-Employed (SB/SE). ICE will continue to act as the primary receipt and control function responsible for performing whistleblower claim intake, monitoring, [and] award processing * * *.

---

[26]Specifically, we stated that the "'decision not to act on * * * [the whistleblower's] information' is what we do not review," noting that such determinations are made by operating divisions of the IRS pursuant to the regulations under section 7623. Lacey v. Commissioner, 153 T.C. 146, 168 (2019) (quoting Cohen v. Commissioner, 139 T.C. 299, 302 (2012), aff'd, 550 F. App'x 10 (D.C. Cir. 2014)). By contrast, we found that the Court does have jurisdiction to review the threshold rejection determination--i.e., the decision to summarily reject a claim because, on its face, the claim fails to meet minimum regulatory criteria. Id.

(2) The Whistleblower Office has strategy, policy, administration, oversight, review, and reporting responsibility for the IRS Whistleblower Program. * * *

(3) SB/SE has operational responsibility for the ICE Unit. * * *

Under the realigned system, after initial processing by the WBO, all claims not summarily rejected (e.g., for failure to include required information) are forwarded to the operating division for classification. IRM pt. 25.2.1.2 (Apr. 29, 2019). An operating division classifier (like the SBSE classifier in this case) then determines whether each claim should be rejected, denied, or forwarded for further investigation, IRM pt. 25.2.1.3.1 (May 28, 2020), including by considering whether the claim describes a specific and credible tax issue or is purely speculative, IRM pt. 25.2.1.3.2(5) (May 28, 2020).[27]

We do not consider it improper for the IRS to reorganize itself to allocate the initial classification function to SBSE or other operating divisions and to allocate some audit decisions to the WBO. See Tax Relief and Health Care Act of 2006, sec. 406(b)(1)(B) (providing that the WBO "shall analyze information received from any individual * * * and either investigate the matter itself or assign it to the appropriate Internal Revenue Service office"). But, accepting that such an

---

[27]In this regard, the rules that were in effect during 2019 were materially the same as the current rules. See IRM pt. 25.2.1.3.1-.2 (Jan. 11, 2018).

allocation of duties is permissible, the issue becomes not which IRS office made the determination but rather what the nature of that determination was.

The determination whether a claim satisfies the minimum requirements of the regulations (i.e., the decision whether or not to reject) is not equivalent to a decision of whether to act on a whistleblower's information by commencing an audit (i.e., the decision whether to proceed based on a claim). The former is a basic check of a claim against specified criteria, while the latter is akin to an exercise of discretion--a narrow category of action long shielded from judicial review. See 5 U.S.C. sec. 701(a)(2) (2018) (precluding judicial review of agency actions "committed to agency discretion by law"); see also Heckler v. Chaney, 470 U.S. 821, 830-831 (1985) (explaining that under 5 U.S.C. sec. 701(a)(2), "review is not to be had" in those rare circumstances where the relevant statute "is drawn so that a court would have no meaningful standard against which to judge the agency's exercise of discretion").

As we held in Lacey, when the WBO rejects a claim on its face for failure to conform to the minimum threshold requirements set out in the regulations, an explanation is required and that explanation is reviewable for abuse of discretion. See Lacey v. Commissioner, 153 T.C. at 168 (noting that an abuse of discretion standard applies and that the WBO's exercise of its discretion must conform with

the pertinent regulatory criteria). This is so whether or not an operating division agreed with or participated in the decision.[28] Put another way, the involvement of an operating division does not transform a threshold rejection into an exercise of discretion that is immune from judicial review.[29] Rather, it is the substance of a determination, not the identities of the actors involved, that governs the analysis.

The administrative record here does not show the SBSE classifier acting as a decision maker determining whether the IRS would proceed with an audit. Instead, he functioned as a classifier making a threshold evaluation of the sufficiency of Mr. Rogers' claim, and he ultimately recommended that the claim be rejected for failure to satisfy the regulatory criteria. His actions therefore were consistent with a threshold rejection of a claim and do not preclude our review.

---

[28]The Commissioner relies on a more recent provision of the IRM, added after (and perhaps in response to) our decision in Lacey, to argue that any recommendation by the operating division is an "enforcement decision" that precludes our review. See IRM pt. 25.2.1.3(2) (May 28, 2020) ("The recommendation from classification reflects an enforcement decision of the operating division."). This statement, which the IRM repeats three times in one section, see id.; see also IRM pt. 25.2.1.3.1(1), 25.2.1.3.5(1), was not in effect when Mr. Rogers' claim was under review. And, even if it had been, this kind of self-help on the part of the IRS is unpersuasive. Our analysis turns on the content of a classifier's recommendation, not the label the IRM attaches to it.

[29]Indeed, if we accepted the Commissioner's argument, the WBO's realigned classification process would result in few, if any, cases being subject to this Court's review under Lacey.

## V.    Conclusion

As we describe above, neither the WBO Letter alone nor the Letter coupled with the administrative record here provides a coherent account of the WBO's determination that is consistent with the regulations.  Therefore, the WBO's determination constitutes an abuse of discretion.  It may well be that Mr. Rogers' claim is nothing more than a personal dispute that the IRS will decide not to pursue even if Mr. Rogers provides additional information.  Nevertheless, the WBO must comply with the regulations, and Mr. Rogers is entitled to transparency and candor as to the reasons for its ultimate determination.  We cannot countenance intentional obfuscation by the WBO, nor will we bless attempts to improperly shield cases from judicial review.  Accordingly, we will deny the Commissioner's motion as supplemented and remand the case to the WBO for further consideration.[30]

To reflect the foregoing,

An appropriate order will be issued.

---

[30]We have considered all the arguments made by the parties, and to the extent not mentioned above, we conclude they are moot, irrelevant, or without merit.